STATE, Respondent, v. SANKEY, Appellant

(299 N. W. 235.)

(File No. 8402.   Opinion filed July 3, 1941.)
Rehearing Denied September 9, 1941.

**John N. Weber,** of Watertown, for Appellant.

**Leo A. Temmey,** Atty. Gen., and **R. C. Riter,** Asst. Atty. Gen., for Respondent.

ROBERTS, J.   Defendant was charged in an information containing six counts with the crime of embezzling state funds.   It charges, in substance, that during the months of September, October and November, 1939, defendant was the president and managing officer of the Sankey Fuel & Trans-

portation Co., a corporation; that the company as a licensed dealer imported and sold during the said period 41,400 gallons of taxable motor fuel and as the agent of the state collected the motor fuel tax imposed thereon from persons to whom the motor fuel was sold; and that defendant unlawfully and feloniously aided and abetted the company in embezzling and appropriating to their own use the money so collected. The jury returned a verdict of guilty, and from the judgment entered upon the verdict, defendant has appealed.

Defendant assigns as error that the evidence fails to establish his guilt. It is urged that defendant was merely indebted to the state for the amount of tax on the motor fuel sold; that defendant cannot be found guilty of embezzlement when no trust relationship existed; and that the motor fuel tax statute contains specific and exclusive provisions for violation of its provisions.

The Motor Vehicle Fuel Tax Law, SDC 57.38, imposes a tax of four cents per gallon on all motor fuel sold or used in this state. It provides that the tax shall be collected by a "dealer", and that it shall be unlawful for any dealer to engage in business without first securing a license from the State Treasurer. The term "dealer" includes "any person, firm, association, or corporation, selling or receiving from any source, importing or causing to be imported into this state, * * * motor fuel for use, sale, or distribution in this state." The dealer is required to collect the tax of four cents per gallon at the time of making sale, and to render to the State Treasurer on or before the 15th of each month a statement under oath of all motor vehicle fuel imported, sold or used during the preceding month. The dealer is required to pay the tax within thirty days after the filing date of the monthly report. A deduction of four percent of the total gallonage may be made for losses in handling, expenses incurred, preparing monthly reports, accounting for and collection of the taxes. The act makes the dealer "an agent of the state for the purpose of * * * collection", and provides that the four cents per gallon shall be collected by

the dealer in addition to the selling price. Any person purchasing fuel for a purpose other than the operation of a motor vehicle upon the highways of this state may obtain a refund upon making a claim to the State Highway Commission. If any person liable for the payment of the tax fails or refuses to make payment, the tax becomes delinquent and a penalty attaches. The State Treasurer is authorized to revoke the license of a dealer who fails to comply with any provision of the act, and it is made the duty of the Attorney General to bring an action to recover the amount certified by the State Treasurer as delinquent.

SDC 57.9930 provides: "Any dealer, person, or association of persons, firm, partnership, or corporation who shall fail to transmit or pay the motor vehicle fuel tax prescribed in chapter 57.38, at the time or in the manner as therein provided, as required by such chapter, * * * shall be guilty of a misdemeanor for the first offense * * * and for each subsequent offense he shall be guilty of a felony. No person who shall commit or assist in committing any offense therein defined, or violating any of the provisions thereof shall be exempt from conviction and punishment therefor, for the reason that he acted as the officer, agent, employee, or representative of another, or as the officer, agent, employee, or representative of a firm, partnership, association of persons, or corporation."

This court in Standard Oil Co. v. Jones, 48 S. D. 482, 205 N. W. 72, 73, construing a similar statute, decided adversely to the contention that the tax imposed by the statute was a direct tax on gasoline imported into the state and constituted a burden on interstate commerce. It was said: "The entire act is directed to the devising of means to collect a tax from the purchaser and not from the seller. * * * Thus it is seen that the tax is really collected from the purchaser, and that the dealer is merely an agency through which collection is made. * * * A careful study of this act convinces us that the true object and purpose of this act is to tax users of gasoline in the state 3 cents per gallon through the agency of a dealer's tax. Every provision

is to effect this result, to avoid any interference with interstate commerce, and to permit of no discrimination. * * * The only exception to the tax upon the consumer is in favor of those operating or propelling stationary gasoline engines, tractors used for agricultural purposes, motorboats, airplanes or aircraft, or those using gasoline for lighting, heating, cleaning, dyeing, or other commercial use not upon the highways. Such users are exempted by a provision requiring a return of the tax which they have been compelled to pay. If it were not in fact a tax on the consumer, there could be no justification for the state to pay such consumer a tax collected of another."

■■ The purpose of the legislature was to impose the tax on the user of motor vehicle fuel and not upon the dealer. The act makes the dealer an agent of the state for the purpose of collecting the tax. This is not an uncommon method of collecting motor fuel taxes. Monamotor Oil Company v. Johnson, 292 U. S. 86, 54 S. Ct. 575, 78 L. Ed. 1141. Since the statute creates an agency and the taxes come into the possession of a dealer in a fiduciary capacity, the willful omission or refusal to pay over to the state taxes collected subjects the dealer to prosecution under SDC 13.1306 for embezzlement.

■ The Motor Vehicle Fuel Tax Law provides a penalty for failure to pay the tax to the state. This is a penalty for non-payment and does not preclude prosecution for embezzlement where there is fraudulent intent to appropriate taxes collected. People v. Kopman, 358 Ill. 479, 193 N. E. 516; Anderson v. State, 221 Wis. 78, 265 N. W. 210. The Motor Fuel Tax Act of Illinois contains similar provisions and in answer to the contention that specification of penalties and modes of procedure indicated an intention to make them exclusive, the court in People v. Kopman, supra [358 Ill. 479, 193 N. E. 518], said: "There is a wide difference between the charge of a failure and refusal to pay over to the Department of Finance the tax collected under the act and a charge of embezzlement, which consists of the fraudulent conversion of money or property by a defendant to his

own use. The purpose of section 15 (Smith-Hurd Ann. St. c. 120, § 431) was to compel the prompt payment of the tax money to the state and to provide a penalty for failure to do so. The elements of fraudulent conversion and felonious intent are not essential to a prosecution under it. A party may be found guilty under that section for mere refusal to pay over the tax money, whether he converted it to his own use or not."

After a careful review of the record, we are of the opinion that the evidence is sufficient to sustain the verdict and that defendant had a fair and impartial trial.

The judgment appealed from is affirmed.

POLLEY, P.J., and WARREN and RUDOLPH, JJ., concur.

SMITH, J., not sitting.