VINZ et al., Respondents, v. NORD, Director of Taxation, et al., Appellants.

(17 N. W.2d 299.)

(File No. 8744. Opinion filed January 12, 1945.)

**George T. Mickelson,** Atty. Gen., **Benjamin D. Mintener,** Asst. Atty. Gen., and **Roy A. Nord,** of Pierre, for Appellants. **Louis H. Smith,** of Sioux Falls, for Respondents.

SMITH, P.J.   The plaintiffs, citizens and taxpayers of South Dakota, are engaged in farming operations within the state.   In the course of these operations they purchase gasoline and fuel for use in tractors upon their farms. Under the provisions of the Motor Fuel Act, SDC 57.38, as amended by

Ch. 351, Laws 1941, rights have and will continue to accrue to them to receive refunds from the state of sums paid as excise tax on such fuel so used. They allege that the defendants in their capacity as officers of the state have been deducting from refunds so accruing to plaintiffs a tax under the Use Tax Act, Ch. 276, Laws 1939, and that defendants assert the right under said act to continue to make like deduction from such refunds as accrue to plaintiffs in the future. In this action plaintiffs seek a judgment on behalf of themselves and all others in a similar situation, declaring that gasoline or fuel used in tractors solely in farming operations is not subject to the tax imposed by the cited Use Tax Act.

The defendants answered and denied that they had made or intended to make such deductions under the Use Tax Act, and alleged that they had and intended to make such deductions under the provisions of the Retail Occupational Sales Tax Act, SDC 57.31, 57.32 and 57.33.

Except for certain exhibits introduced by plaintiffs, the case was heard on admitted and stipulated facts. It was stipulated that "the sales referred to in the complaint were made from bulk service stations or stations within the State of South Dakota." The trial court concluded (1) that the gasoline and fuel described in the complaint is not subject to tax under the Use tax Act; (2) that defendants are without power, right or authority to deduct any tax from the refunds to the plaintiffs on such gasoline or fuel; and (3) that that the plaintiffs are entitled to an injunction enjoining and restraining the defendants from making any deductions for tax from the refunds due to plaintiffs on such gasoline and fuel, either under the Use Tax, or the Retail Occoupational Sales Tax Act, and entered judgment accordingly. The defendants have appealed and under appropriate assignments challenge all of the provisions of the judgment below.

We have concluded that the Retail Occupational Sales Tax Act applies and that the use of the fuel described in the stipulation is not subject to tax under the Use Tax Act.

The refunds to which reference has been made accrue under provision of the Motor Fuel Act set forth in SDC 57.38 and Chs. 349, 350 and 351, Laws 1941. These enactments

impose an excise tax of four cents per gallon, or fraction thereof, upon defined petroleum products sold or used within the state, and require dealers in such products to collect the same by adding the amount thereof to the purchase price. If such fuel is used for certain agricultural purposes and not in motor vehicles operated or intended to be operated on the public highways, the tax so paid by a purchaser is refunded by the state. SDC 57.3812.

The Retail Occupational Sales Tax Act (hereafter called the Sales Tax Act) was originally enacted as part of Ch. 205, Laws 1935, and now appears as SDC 57.31, SDC 57.32, and SDC 57.33. In arriving at the conclusions we have stated, we first considered the Stales Tax Act in its original form. Thereafter we sought to ascertain whether certain legislation enacted in 1939 reflected a change in the original intention of the legislature. Our discussion of the issues follows a like course.

■ The Sales Tax Act imposes an occupational tax upon the privilege of engaging in business at retail, measured by the gross receipts from sales. State ex rel. Sioux Falls Motor Co. v. Welsh, 65 S. D. 68, 270 N. W. 852. By an authorized procedure of adding the average equivalent thereof to the purchase price of goods the incidence of the tax is shifted to the consumer, but nevertheless the burden of liability therefor rests upon the retailer, SDC 57.3304.

By SDC 57.3201 of the Sales Tax Act, it is provided:

"There is hereby imposed as a tax upon the privilege of engaging in business as a retailer, a tax of three per cent upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this chapter, sold at retail in the state of South Dakota to consumers or users." (The above described rate was reduced to two per cent. Ch. 345, Laws 1941.)

By SDC 57.3101 (5) it is provided:

" 'Retail sale' or 'sale at retail' means the sale of tangible personal property to the consumer or user thereof, or to any person for any purpose other than for resale."

By SDC 57.3101 (6), it is provided:

" 'Retailer' includes every person engaged in the business of selling tangible goods, wares, or merchandise at retail, * * *."

■■■ We pause to observe, that under the foregoing provisions, the gasoline or fuel described in the stipulation is "tangible personal property"; the plaintiffs who use such gasoline on their South Dakota farms are "consumers" thereof; and the sale of such tangible personal property to plaintiffs at bulk stations in South Dakota is a "sale at retail" by a "retailer". It is plain that these sales are within the sweep of the overall provisions of the Sales Tax Act. Are they excluded from its embrace by its specific provisions?

Keeping in mind that the Motor Fuel Act, SDC 57.38, imposes an excise tax on the user of such fuel, and makes the dealer the collector thereof, State v. Sankey, 68 S. D. 127, 299 N. W. 235, we look at a particular exemption contained in the Sales Tax Act. By SDC 57.3202 thereof it is provided:

"There are hereby specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by it, the following: * * *

"(6) Gross receipts from the sale of gasoline, * * * already taxed under the laws of this state."

■■■ In a sense, the gasoline purchased and used in the manner described in the stipulation is "gasoline * * * already taxed under the" Motor Fuel Act. And this is the contention of plaintiffs. But the tax paid by plaintiffs is refundable to them in full under SDC 57.3812 and the subsequent amendments of that section. Hence, this gasoline is not actually "already taxed under the laws of this state" because the refund provisions of the Motor Fuel Act constitute but a type or method of tax exemption. The end result of the functioning of the Motor Fuel Act is to relieve plaintiffs from payment of that excise on the described gasoline or fuel. Therefore, we conclude that when the above quoted exemption of gasoline, as contained in the Sales Tax Act, is read in the light of the provisions of the Motor Fuel Act, but one conclusion is admissible, viz., that plaintiffs' gasoline is not "already taxed" and hence not exempt from the provisions of the Sales Tax Act.

What seems clear to us from reading this much of the Sales Tax Act becomes more certain when we look at another provision of that act.

By SDC 57.3306, it is provided:

"The tax imposed by this part upon those sales of motor vehicle fuel which are subject to tax under the laws of South Dakota shall be collected by the State Treasurer by way of deduction of refunds otherwise allowable under the provisions of the South Dakota statutes applicable thereto."

That the legislature intended to extend the provisions of the Sales Tax Act to a class of retail sales of gasoline is placed beyond reasonable debate by the language of this section. The section refers to "The tax imposed by this part upon * * * sales of motor vehicle fuel." Further, it clearly describes the class of such sales it had in mind, viz., those retail sales of gasoline or motor fuel upon which refunds are allowable under the Motor Fuel Act. The gasoline or motor fuel sales described in the stipulation of facts are of that class. No other meaning can be read from this act.

We therefore conclude that the Sales Tax Act as originally enacted required the defendants to make the challenged deductions from the refunds allowable to plaintiffs under the Motor Fuel Act.

If we understand the brief of plaintiffs, it suggests that the foregoing interpretation is rendered inadmissible for the reason that the Retail Occupational Sales Tax is a tax on the privilege of engaging in business at retail and places the burden of liability for the tax on the retailer, while the Motor Fuel Act imposes an excise tax on the user of gasoline, and but obligates the dealer to collect that tax. We fail to perceive any significance in this difference between the acts. The incidence of both of these taxes is upon the consumer. They are alternative revenue measures. While four cents per gallon is collected from a purchaser at the time of every sale of gasoline at retail, the use to which the gasoline is put determines whether a particular purchase will bear the excise of the Motor Fuel Act or serve as a measure of the retailers Sales Tax. SDC 57.3306 was enacted in view of that fact to provide a practical method of requiring a purchaser

to pay the equivalent of the sales tax whenever, because of the use made of the gasoline, the Sales Tax Act applies to the purchase and sale thereof.

We turn to the legislation of 1939. At the time of that session of the legislature the Sales Tax Act was in effect as a part of Ch. 205, Laws 1935, in which the language that later became SDC 57.3306, supra, appeared as paragraph (d) of Sec. 34 thereof. During that session and subsequent to the enactment of the 1939 Revised Code, the legislature amended the above section by two separate measures couched in almost identical words, except that Ch. 271, Laws 1939, referred to paragraph (d) of Sec. 34, Ch. 205, Laws 1935, and Ch. 272 referred to SDC 57.3306. By a third measure, viz., Sec. 23 of Ch. 276, Laws 1939, the same legislature purported to expressly repeal SDC 57.3306. The repealing act made no mention of the amendatory acts. Although the repealing act and one of the amendatory acts were passed by the House on the same legislative day (See House Journal 1939, pp. 857 and 877), the repealing act was last approved by the governor. The question we are to decide is whether the amendatory acts were repealed by implication.

Our purposes will be served by quoting Ch. 272, Laws 1939, one of the amendatory acts. It reads as follows:

"Section 1. That Section 57.3306 of the South Dakota Code of 1939 be, and the same is hereby amended to read as follows:

"57.3306. Motor Vehicle fuel taxable under this part, collected by State Auditor by deduction from refunds under Motor Vehicle Fuel Tax Law. The tax imposed by this part upon those sales of motor vehicle fuel which are subject to tax under the laws of South Dakota shall be collected by the State Auditor by way of deduction from refunds otherwise allowable under the provisions of the South Dakota statutes applicable thereto.

"The State Auditor shall cause warrants to be written for the net amount due the person claiming the refund.

"The deduction of said sales tax from the refund due shall be computed by the Division of Taxation.

"At the end of each month the State Auditor shall notify the State Treasurer of the amounts so deducted and the State

Treasurer shall transfer said amount from the Motor Fuel Tax Fund to the General Fund to be allocated as provided by law."

By reference to SDC 57.3306, quoted supra, it will be observed that the amendment charges the State Auditor with duties formerly performed by the State Treasurer, as well as with other duties.

The above cited repealing act was included as a section of Ch. 276, Laws 1939. That chapter enacted the Use Tax Act. The Use Tax Act was intended as a supplement or complement of the Sales Tax Act. See 47 Am. Jur. 249. As a part of Use Tax Act, the legislature by Sec. 6(2) thereof provided:

"The tax imposed by this Act upon those sales of motor vehicle fuel which are subject to tax under this Act, shall be collected by the State Auditor by way of deduction of refunds otherwise allowable under the provisions of the South Dakota statutes applicable thereto. The State Auditor shall, when issuing a warrant in payment of any refund claimed under Section 57.3812, after the application for said refund has been approved by the State Highway Commission, first cause to be determined the amount of tax due imposed by this Act on the purchase price of the motor fuel on which the refund is claimed and shall issue the warrant for refund in the amount claimed after deducting the amount of tax due on the purchase price of said motor fuel that is imposed by this Act and shall issue a warrant to the Division of Taxation once each month for the total amount of the deduction made from such refunds and the Director of Taxation shall employ the necessary clerical help, auditors or bookkeepers to aid the said State Auditor to determine the correct amount due under this Act upon those sales of motor vehicle fuel upon which an application for refund of the motor fuel tax is made."

It would be illogical to infer that a legislature, which adopted the foregoing measure with reference to the deduction of use taxes from refunds allowable under the Motor Fuel Act, would intend at the same time to repeal the related and undoubtedly more remunerative provision dealing with like deductions of sales taxes. Without some similar provision the state and the interested retailers would lack a

practical method or means of dealing with this portion of a retailer's sales tax. It would be equally unreasonable to infer that the legislature, which had the described amendatory and repealing measures under consideration at the same time, would have adopted both unless it intended both should become effective. Such a result can be obtained only if they are considered as parts of a single act. So considered, they repeal the old provision and substitute the amendatory provision.

■ That such was the actual and the manifested intention of the legislature, we do not doubt. It intended to promote efficiency of administration of these acts by charging a single officer with the duty of making deductions of both sales and use taxes from refunds allowable under the Motor Fuel Act. We conclude that the amendatory act remained in force and that the 1939 legislation did no more than reassign the duty to make the challenged deductions.

■ If we are correct in the foregoing conclusion, it follows that the defendants are not authorized to make deductions from the described refunds under the Use Tax Act. The complementary Use Tax Act does not apply to the use of tangible personal property, the purchase price of which serves as the measure of the retailer's tax under the Sales Tax Act. The Use Tax Act provides:

"Section 4. The use in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this Act:

"(1) Tangible personal property, the gross receipts from the sale of which are to be included in the measure of the tax imposed by Chapter 57.31, Chapter 57.32 and Chapter 57.33 of the South Dakota Code of 1939, and any amendments made or which may hereafter be made thereto." Ch. 276, Sec. 4(1), Laws 1939.

The further argument is advanced that the obscure language of subsection (8) of Sec. 4 of the Use Tax Act exempts from the provisions of that act all fuel of any kind which is used in creating power, light or heat, and thus exempts gasoline used in farm tractors, and that thereby the legislature has indicated an intention to amend the exemp-

tion provisions of the related Retail Occupational Sales Tax. We recognize the intimate relation between these acts, but we fail to discover any indication that the legislature intended to impliedly amend any provision of the Retail Occupational Sales Tax Act by the enactment of the Use Tax Act. We, therefore, reserve our opinion of the meaning of subsection (8) of Sec. 4 of the Use Tax Act until occasion arises for its interpretation.

The judgment is reversed, and the trial court is directed to enter conclusions of law and judgment in harmony with the foregoing opinion.

All the Judges concur.