## STATE OF CONNECTICUT *v.* GARRET D. KOZLOWSKI (12899)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and STOUGHTON, Js.

Argued March 11—decision released May 20, 1986

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, and *Robert G. Hall,* assistant state's attorney, for the appellant (state).

*Joseph I. Lieberman,* attorney general, with whom were *Arnold B. Feigin* and *Richard F. Kehoe,* assistant attorneys general, and, on the brief, *Clarine Nardi Riddle,* deputy attorney general, and *Bernard F. McGovern, Jr.,* associate attorney general, amici curiae.

*Ronald D. Williams, Jr.,* deputy assistant public defender, for the appellee (defendant).

PETERS, C. J. The sole issue on this appeal is whether the passage of a public act effecting changes in General Statutes § 14-227a impliedly repealed another public act passed earlier in the same legislative session and dealing with the same statute. The defendant, Garret D. Kozlowski, was arrested on October 3, 1985, and charged with driving under the influence of alcohol, in violation of General Statutes § 14-227a.[1] Claiming that

[1] Prior to the changes made by the public acts at issue in this case, General Statutes § 14-227a provided in relevant part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while under the influence of intoxicating liquor or any drug or both. . . .

"(h) PENALTIES FOR OPERATION WHILE UNDER THE INFLUENCE. Any person who violates the provisions of subsection (a) of this section shall: (1) For a first offense, be fined not less than five hundred dollars nor more than one thousand dollars or imprisoned not more than six months, or be both fined and imprisoned, and have his motor vehicle operator's license

the legislature had passed two public acts during the 1985 session, each of which authorized a different penalty for a violation of § 14-227a, the defendant moved for a declaratory judgment to determine which of the two penalty provisions would apply in the event of his conviction. The trial court, *Buzaid, J.,* ruled that the later enacted act, Public Acts 1985, No. 85-596, had impliedly repealed the earlier enacted act, Public Acts 1985, No. 85-387, and therefore established the applicable penalties for a violation of the statute. The state has appealed from this decision.[2]

or nonresident operating privilege suspended for one year; (2) for a second offense, be fined not less than five hundred dollars nor more than two thousand dollars and imprisoned not more than one year, forty-eight consecutive hours of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege suspended for two years; (3) for a third offense, be fined not less than one thousand dollars nor more than four thousand dollars and imprisoned not more than two years, thirty days of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege suspended for three years; and (4) for a fourth and subsequent offense, be fined not less than two thousand dollars nor more than eight thousand dollars and imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege permanently revoked upon such fourth offense. For purposes of the imposition of penalties for a second, third or fourth and subsequent offense pursuant to this subsection, a conviction under the provisions of section 14-227a in effect on October 1, 1981, or as amended thereafter, shall constitute a prior offense."

[2] This appeal was brought under General Statutes § 52-265a, which provides: "DIRECT APPEAL ON QUESTIONS INVOLVING THE PUBLIC INTEREST. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The chief justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the chief justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge

The underlying facts are not in dispute. In May, 1985,[3] the Connecticut legislature passed Public Acts 1985, No. 85-387, entitled, "An Act Increasing the Imprisonment Penalties for Drunk Driving to Meet Federal Standards." Section one of this act changed subsection (h) of General Statutes § 14-227a by repealing the penalties provided for first, second, and third offenders, and substituting more severe penalties in their place. The Governor signed this act on June 28, 1985.

Subsequent to the passage of this act but prior to its signing by the Governor, the legislature passed, in early

shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the chief justice, who shall thereupon call a special session of the supreme court for the purpose of an immediate hearing upon the appeal.

"(d) The chief justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

An appeal brought under this statute need not be taken from a final judgment. *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984).

[3] Public Acts 1985, No. 85-387, provides in relevant part: "AN ACT INCREASING THE IMPRISONMENT PENALTIES FOR DRUNK DRIVING TO MEET FEDERAL STANDARDS.

"Section 1. Subsection (h) of section 14-227a of the general statutes is repealed and the following is substituted in lieu thereof:

"(h) Any person who violates the provisions of subsection (a) of this section shall: (1) For CONVICTION OF a first [offense] VIOLATION, be fined not less than five hundred dollars nor more than one thousand dollars [or] AND (A) imprisoned not more than six months, [or be both fined and imprisoned,] FORTY-EIGHT CONSECUTIVE HOURS OF WHICH MAY NOT BE SUSPENDED OR REDUCED IN ANY MANNER OR (B) SENTENCED TO A TERM OF ONE HUNDRED HOURS OF COMMUNITY SERVICE, AS DEFINED IN SECTION 3 OF THIS ACT, and have his motor vehicle operator's license or nonresident operating privilege suspended for one year; (2) for CONVICTION OF a second VIOLATION WITHIN FIVE YEARS AFTER A CONVICTION FOR THE SAME offense, be fined not less than five hundred dollars nor more than two thousand dollars and imprisoned not more than one year, [forty-eight consecutive hours] TEN DAYS of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident oper-

June, 1985,[4] Public Acts 1985, No. 85-596, entitled, "An Act Establishing a 'Per Se' Standard for Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor." This act changed subsection (a) of General Statutes § 14-227a to provide that operating a motor vehicle "while the ratio of alcohol in the blood . . . is ten-hundredths of one per cent or more of alcohol, by weight" would in itself constitute the offense of driving under the influence of liquor in violation of the statute. The act also made changes in subsections (c), (d) and (h) of § 14-227a to conform with the new per se standard contained in subsection (a). To effect these changes, and in accordance with the format prescribed by General Statutes § 2-18,[5] Public Acts 1985, No. 85-596, recited § 14-227a in its entirety, capitaliz-

ating privilege suspended for two years; (3) for CONVICTION OF a third VIOLATION WITHIN FIVE YEARS AFTER A PRIOR CONVICTION FOR THE SAME offense, be fined not less than one thousand dollars nor more than four thousand dollars and imprisoned not more than two years, [thirty] ONE HUNDRED TWENTY days of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege suspended for three years; and (4) for CONVICTION OF a fourth and subsequent VIOLATION WITHIN FIVE YEARS AFTER A PRIOR CONVICTION FOR THE SAME offense, be fined not less than two thousand dollars nor more than eight thousand dollars and imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and have his motor vehicle operator's license or nonresident operating privilege permanently revoked upon such fourth offense. For purposes of the imposition of penalties for a second, third or fourth and subsequent offense pursuant to this subsection, a conviction under the provisions of section 14-227a in effect on October 1, 1981, or as amended thereafter, shall constitute a prior offense."

It was passed by the House of Representatives on May 21, 1985, and by the Senate on May 28, 1985.

[4] Public Acts 1985, No. 85-596, was passed by the House of Representatives on June 1, 1985, and by the Senate on June 4, 1985.

[5] General Statutes § 2-18 provides in relevant part: "FORM OF BILLS AMENDING STATUTES AND RESOLUTIONS AMENDING CONSTITUTION; BALLOT DESIGNATION OF PROPOSED CONSTITUTIONAL AMENDMENTS. Each bill for a public act amending any statute, each special act amending any special act and each resolution proposing an amendment to any provision of the constitution shall set forth in full the act or constitutional provision,

ing new sections to be added and placing brackets around sections to be omitted. The act was prefaced by the phrase, "Section 14-227a of the general statutes is repealed and the following is substituted in lieu thereof."

In ruling that this act impliedly repealed Public Act No. 85-387, the trial court found that, by republishing § 14-227a in its entirety without reference to the increased penalties contained in the recently-passed Public Act No. 85-387, the legislature had effectively reinstated the previous penalty provisions. Since these provisions differed from the penalties contained in Public Acts 1985, No. 85-387, the court held that "[t]he acts [were] directly in conflict with each other on their face." Consequently, invoking the doctrine that, "when two legislative enactments are in conflict and cannot reasonably be reconciled, the later one repeals the earlier one to the extent that they are in conflict," the court declared that "Public Act No. 85-387 was repealed by implication by the subsequent enactment of Public Act No. 85-596 and, therefore, would not be controlling over the defendant." In reaching this conclusion, the trial court rejected the state's argument that a different result was mandated by General Statutes § 2-30b,[6] which provides that concurrent effect should be given

---

or the section or subsection thereof, to be amended. Matter to be omitted or repealed shall be surrounded by brackets and new matter shall be indicated by underscoring or, where an electric magnetic tape typewriter or other electronic equipment or device is used, by capitalization or underscoring of all words in the manuscript bill and by underscoring, capitalization or italics in its printed form."

[6] "[General Statutes] Sec. 2-30b. CONSTRUCTION OF MULTIPLE AMENDMENTS. When two or more acts passed at the same session of the general assembly amend the same section of the general statutes, or the same section of a public or special act, and reference to the earlier adopted act is not made in the act passed later, each amendment shall be effective except in the case of irreconcilable conflict, in which case the act which was passed last in the second house of the general assembly shall be deemed to have repealed the irreconcilable provision contained in the earlier act."

to "two or more acts passed at the same session of the general assembly [which] amend the same section of the general statutes . . . except in the case of irreconcilable conflict . . . ." The trial court concluded that § 2-30b was inapplicable to the present case because it applies, by its own terms, only to *amendatory* acts, whereas Public Acts 1985, Nos. 85-387 and 85-596, were legislatively characterized as *repealing* acts.

On appeal from the court's decision, the state claims that the trial court erred both in failing to apply General Statutes § 2-30b, and in finding an irreconcilable conflict between the two public acts. Our resolution of the state's claim, therefore, requires us to undertake a two-step analysis. We must decide first whether Public Acts 1985, Nos. 85-387 and 85-596, are amendatory acts within the meaning of § 2-30b, thereby triggering the application of that statute to the present controversy. Second, if we find that § 2-30b does in fact apply, we must determine whether it requires us to give concurrent effect to both public acts.

Our interpretation of the meaning and scope of § 2-30b takes place within well defined limits. The fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the legislature. *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981); 2A Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. In seeking to discern this intent, we look to the words of the statute itself; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); to the legislative history and circumstances surrounding the enactment of the statute; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* supra, 522; to legis-

lative practice and policy; *Doe* v. *Manson,* 183 Conn. 183, 187, 438 A.2d 859 (1981); and to judicial construction.

I

The state's first claim of error concerns the scope of application of § 2-30b. The question therein raised is whether a statute which refers specifically to amendatory acts applies equally to acts which the legislature has denominated as repeals. The state concedes that both acts in question are characterized in their prefaces as repeals, and concedes further that other acts passed by the legislature are expressly characterized as amendments. It argues, however, that these labels are not determinative of § 2-30b's application.

In construing the extent of § 2-30b's reach, we look first to its express language. If the words are clear and unambiguous, "it is assumed that [they] express the intention of the legislature"; *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981); and we need inquire no further. *Hayes* v. *Smith,* supra, 58; *Doe* v. *Manson,* supra, 186. Although § 2-30b refers specifically to an "amendment," it does not define what is meant by that term, or indicate how broadly "amendment" is to be read. In order to determine the statute's scope, therefore, we must look beyond the words to determine the legislature's intent. *Tramontano* v. *Dilieto,* 192 Conn. 426, 433–34, 472 A.2d 768 (1984); *State* v. *Delafose,* supra, 522; see 2A Sutherland, supra, § 46.07, p. 110.

An examination of the legislative history of § 2-30b indicates that the legislature intended the statute to apply to all acts which make changes in existing legislation, regardless of whether those acts are denominated as amendments or as repeals. Section 2-30b was passed in response to our decision in *Menzies* v. *Fisher,* 165 Conn. 338, 334 A.2d 452 (1973). See 17 H. R. Proc., Pt. 1, 1974 Sess., p. 430, remarks of Rep. James F.

Bingham. In *Menzies* we held, on facts similar to the present ones, that a public act passed during the 1967 legislative session amending General Statutes § 31-298 was impliedly repealed by a public act passed later in the same session, which set forth § 31-298 in its entirety, and substituted new language for some of the old. Neither of the public acts at issue in *Menzies* was characterized in its preface as an amendment. Instead, both acts contained the identical "repeal and substitute" prefatory language that is found in Public Acts 1985, Nos. 85-387 and 85-596. Nevertheless, in enacting § 2-30b to clarify the status of such multiple acts, the legislature chose to use the word "amendment." This legislative history evidences an intent that § 2-30b encompass any and all acts which expressly change prior statutes.

A broad reading of § 2-30b is supported by an examination of the practice followed by the legislature in altering existing statutes. The legislature characteristically casts acts which alter language within existing statutory subsections in the form of repeal and substitution, reserving the label of amendment for acts which add entirely new subsections.[7] This format complies with the requirements of § 2-18 that an act altering a statutory subsection set out that subsection in its entirety, with changes clearly marked. Nevertheless, the legislature itself commonly refers to both types of acts as amendments, without regard to their prefatory

---

[7] It is true, as the defendant notes, that the legislature uses the term "amend" in some acts which change prior statutes, and uses the phrase "repeal and substitute" in others. A review of public acts passed during the 1985 legislature reveals that the legislature consistently used the term "amend" in three discrete circumstances: in altering special acts and bonding bills, neither of which are codified into statutes; and in adding full subsections to previous statutes, rather than changing words within existing subsections. We do not conclude from this practice, however, that the legislature intends to draw a substantive distinction which would affect our analysis.

denominations. See Public Acts 1985, No. 85-613, § 134, which refers to Public Acts 1985, No. 85-254, as amendatory, even though that act contains a repeal and substitute preface; and Public Acts 1985, No. 85-613, § 142, referring to Public Acts 1985, No. 85-440. This practice suggests that the choice of prefatory language is prompted more by a desire to conform with the specifications of § 2-18 than by an intent to create a substantive distinction.

Similarly, although we have not previously had occasion to construe § 2-30b, we have noted in another context that "[w]hether a new provision is in the form of a new enactment repealing the old . . . or the form of an amendment of the old is immaterial and depends on the preference of the draftsman." *State* v. *Fahy,* 149 Conn. 577, 581–82, 183 A.2d 256 (1962), rev'd on other grounds, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963). Accordingly, we too have consistently characterized as amendments acts which included the prefatory language of repeal and substitute. See *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd,* 197 Conn. 554, 556, 499 A.2d 797 (1985); *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 548 n.1, 494 A.2d 564 (1985); *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 539, 489 A.2d 363 (1985).

Consequently, in view of the legislative history of § 2-30b, legislative practice, and prior judicial interpretation, we conclude that the legislature intended the word "amendment" as used in § 2-30b to apply to all acts which expressly change existing legislation, regardless of the specific prefatory language used. Accordingly, we hold that Public Acts 1985, Nos. 85-387 and 85-596, fall within the purview of § 2-30b, and that the trial court erred in not considering that statute in its evaluation of the effectiveness of the acts.

## II

Having decided the applicability of § 2-30b to the present case, we must next determine whether the statute mandates a finding that the two acts should both be given effect. Under the terms of § 2-30b, both public acts are effective, even though "reference to the earlier adopted act is not made in the act passed later," unless they are in irreconcilable conflict. If such conflict is found, the later act "shall be deemed to have repealed the irreconcilable provision in the earlier act." The trial court found the acts to conflict with each other "on their face" because the later enacted act, Public Acts 1985, No. 85-596, by restating the penalty provision of General Statutes § 14-227a (h) without reference to the increased penalties provided in Public Acts 1985, No. 85-387, effectively restored the original lesser penalties. Thus, the court reasoned, the two acts each provided a different punishment for the same violation, thereby causing an irreconcilable conflict.

In urging us to uphold the trial court's decision, the defendant argues that we are bound to enforce the legislature's clear and unambiguous "legal" intent to reinstate the penalties contained in § 14-227a. According to the defendant, the legislature unequivocally manifested that intent by omitting the language of Public Acts 1985, No. 85-387, from Public Acts 1985, No. 85-596, while reprinting § 14-227a (h) in its entirety.[8] We disagree.

Although the legislature's restatement of § 14-227a has admittedly created a surface inconsistency, we

---

[8] The defendant also argues that our holding in *Menzies* v. *Fisher,* 165 Conn. 338, 334 A.2d 452 (1973), requires a finding that Public Acts 1985, No. 85-387, was repealed by Public Acts 1985, No. 85-596. *Menzies,* however, was decided prior to the enactment of § 2-30b. Since we have held in part I that § 2-30b applies to this case, our analysis must be done in the context of that statute.

must begin our analysis by presuming that, in passing the later act, the legislature did so with an awareness of the earlier one and with an intent to create a consistent body of law. *Sullivan* v. *State,* 189 Conn. 550, 556 n.7, 457 A.2d 304 (1983); *Cairns* v. *Shugrue,* 186 Conn. 300, 306, 441 A.2d 185 (1982); *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 123, 434 A.2d 949 (1980). "The point of the rules of interpretation is to give harmonious effect to all acts on a subject where reasonably possible." 1A Sutherland, supra, § 23.10, p. 346; *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984). Although penal statutes are to be construed strictly, they are not to be construed so as to disregard the context in which they exist or to frustrate the obvious intent of the legislature. *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983).[9]

In attempting to glean legislative intent, it is often useful to examine the title of a proposed bill; *Cairns* v. *Shugrue,* supra, 308; and the purpose the legislature intended to accomplish by its enactment. *Dukes* v. *Durante,* supra, 214; *Seals* v. *Hickey,* 186 Conn. 337, 345, 441 A.2d 604 (1982); *State* v. *Delafose,* supra, 522. In the present case, it is significant to note that, although Public Acts 1985, No. 85-387, is entitled "An Act Increasing the Imprisonment Penalties for Drunk Driving to Meet Federal Standards," Public Acts 1985, No. 85-596, makes no reference to penalties in either

---

[9] Other states considering the effectiveness of two acts passed at the same legislative session, both amending the same statute but neither making reference to the other, have generally focused on the intent of the legislature. See *Apex Motor Fuel Co.* v. *Barrett,* 20 Ill. 2d 395, 400, 169 N.E.2d 769 (1960) (intent that both acts be given effect); *U.S. Steel* v. *Allegheny County,* 369 Pa. 423, 429, 86 A.2d 838 (1952) (intent that later act repeal earlier); *Vinz* v. *Nord,* 70 S.D. 304, 311–12, 17 N.W.2d 299 (1945) (intent that both acts be given effect); *Copeland Lumber Co.* v. *Wilkins,* 75 Wash. 2d 940, 943, 454 P.2d 821 (1969) (intent that both acts be given effect).

its title or its statement of purpose.[10] In addition, whereas Public Acts 1985, No. 85-387, focuses its proposed changes to § 14-227a solely on increasing the penalties, Public Acts 1985, No. 85-596, purports to make no changes whatsoever to the penalties imposed by the statute. Rather, its proposed alterations concern only the creation and application of a per se standard. This is evidence that, in passing these two acts separately, the legislature sought to make two separate and distinct changes in § 14-227a. Rather than intending to reinstate the previous penalties when it printed § 14-227a in its entirety, it is more likely that the legislature did so merely to comply with the format procedures specified in § 2-18.[11] See *Apex Motor Fuel Co. v. Barrett,* 20 Ill. 2d 395, 399–400, 169 N.E.2d 769 (1960) (reprinting of entire statute in later act not indicative of legislative intent to repeal earlier act

---

[10] Public Acts 1985, No. 85-596, is entitled "An Act Establishing a 'Per Se' Standard for Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor."

This act's express statement of purpose is: "To provide that a person is guilty of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug when he has a blood alcohol concentration of ten-hundredths of one per cent or more of alcohol by weight."

[11] Prior to 1945, when the legislature wished to amend an existing statute, it passed an act which set out the statute in its amended form, without including the language which was being altered. Under this format, it was customary to preface the act with a statement that the relevant statute "is amended to read . . . ." Because this form made it difficult for both legislators and the public to recognize the extent of the proposed change without comparing the existing statute with the proposed bill, the legislature in 1945 passed Public Acts 1945, No. 3, which was the forerunner of the present General Statutes § 2-18. See 1 H. R. Proc., Pt. 1, 1945 Sess., p. 39, remarks of Rep. Herbert B. Wanderer. This act provided for the first time that each public act amending an existing statute "shall set forth in full the act, or the section or subsection thereof, to be amended. Matter to be omitted or repealed shall be surrounded by brackets and new matter shall be indicated by underscoring." In line with this new format, it became customary for amendatory acts to be prefaced by a statement that the relevant statute "is repealed and the following is substituted in lieu thereof." With changes not relevant to this case, § 2-18 provides substantially the same provision today.

passed in same session, but merely to comply with state constitutional requirement that section to be amended be reprinted in its entirety).

This conclusion is strengthened by an examination of the legislative history accompanying the passage of Public Acts 1985, No. 85-596. During the course of the Senate debate, several references were made to the increased penalties contained in Public Acts 1985, No. 85-387, which had already been passed by the legislature, but which had not yet been signed into law by the governor. See 28 S. Proc., Pt. 16, 1985 Sess., pp. 5342–47. In explaining why Public Acts 1985, No. 85-596, still contained the old penalty provisions of § 14-227a rather than the increased penalties found in Public Acts 1985, No. 85-387, Senator Richard B. Johnston stated: "[T]hat is the present state of the law and that's a reciting of the present penalties. If the legislation that has passed the House of Representatives and the Senate is signed by the Governor, that will be changed." 28 S. Proc., Pt. 16, 1985 Sess., p. 5344. This history strongly supports a finding that the legislature did not intend Public Acts 1985, No. 85-596, to reinstate the prior penalties, but rather intended both acts to be given concurrent effect to the extent that they specifically *altered* § 14-227a.[12]

A further indication that the legislature did not intend Public Acts 1985, No. 85-596, to repeal the penalty provisions of Public Acts 1985, No. 85-387, is the fact that the legislature has express procedures for making

---

[12] This conclusion reflects a recognition of the realities of the legislative process. It is impossible for the legislature to know, at the time it votes on a particular bill, when or whether that bill will be signed by the Governor. It is entirely possible for a bill which has been passed early in the session to be signed after a bill which has been passed later in the session. It is also possible for a bill which has been passed by the legislature to be vetoed by the Governor. In the face of such inevitable uncertainty, it would thus be difficult for the legislature to make reference in one pending bill to provisions contained in another pending bill.

changes in a prior act which has been passed earlier in the same legislative session. It can either recall the bill from the governor's desk as provided in Rule 23 of the joint rules of the senate and house of representatives (1984-85),[13] or it can pass a public act *specifically* repealing or amending the prior act. We find it significant that the legislature followed this latter route when it decided to delete a section from Public Acts 1985, No. 85-387, after it had been passed. See Public Acts 1985, No. 85-613, § 137. It is therefore unlikely that, had the legislature intended to repeal the increased penalties provided in that same public act and reinstate the previous penalties, it would have done so in such an ambiguous manner.

We thus conclude that the legislature did not intend the recitation of General Statutes § 14-227a in Public Acts 1985, No. 85-596, to reinstate the prior penalty provision, but rather intended to conform to the format specifications for amendments contained in General Statutes § 2-18. So construed, Public Acts 1985, Nos. 85-387 and 85-596, are not in conflict. Under § 2-30b, then, both acts are entitled to concurrent effect. The effective penalties for drunken driving in violation of § 14-227a are those enacted by Public Acts 1985, No.

---

[13] Rule 23 of the Joint Rules of the Senate and House of Representatives, Rules and Precedents of the General Assembly of Connecticut 1984-85, provides:

"23. Whenever a bill has passed both houses of the assembly and has been transmitted to the governor for his approval, or to the legislative commissioners for engrossing, if either house desires its return for further consideration, it may, by resolution adopted by both houses, appoint a joint committee of one senator and two representatives to be sent to the governor or the commissioners to request them to return the bill. Any bill transmitted to the governor or the legislative commissioners shall be returned first to that house in which the motion for its return originated, and the bill may then be altered or totally rejected by a concurrent vote of the two houses; but, if not altered or rejected by concurrent vote, it shall be again transmitted to the governor or the legislative commissioners, as the case may be, in the same form in which it was first presented to him or them."

85-387, which, in recognition of the seriousness of this crime, increases exposure to imprisonment for first, second, and third offenders.

In reaching this conclusion, we reject the defendant's claim that his due process right to "fair warning"[14] of the penalties he faced for violation of General Statutes § 14-227a would be violated by a finding that the increased penalty provisions of Public Acts 1985, No. 85-387, are effective. He argues that "[a] citizen of this state should be able to look at the criminal statutes and ascertain the potential deprivation of liberty for a violation of that statute." While we do not disagree with this principle, we are persuaded that the defendant received constitutionally-adequate notice of the penalties he faced. Public Acts 1985, No. 85-387, clearly spelled out those increased penalties, and § 2-30b provided notice that the penalties remained in effect even after the passage of Public Acts 1985, No. 85-596. This combination is sufficient to satisfy the defendant's constitutional rights to due process.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.

---

[14] The fourteenth amendment to the United States constitution provides in part: "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the Connecticut constitution provides in relevant part: "Section 8. . . . No person shall be . . . deprived of life, liberty or property without due process of law . . . ."