[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] AMENDED MEMORANDUM OF DECISION (MOTION TO DISMISS) and (ORDER TO SHOW CAUSE)
The plaintiff State of Connecticut has filed a nuisance abatement action against the defendant pursuant to General Statutes § 19a-343
and § 19a-343a — § 19a-343h as amended by Public Act 99-115 alleging that the defendant's real property and premises located at 745 River Road, Shelton, Connecticut constitutes a public nuisance within the meaning of General Statutes § 19a-343, et seq.
The State of Connecticut alleges that "the defendants are guilty of creating or maintaining a public liquor nuisance, in that they have maintained, used, owned or leased the above-described premises, known as the Pinecrest Country Club for illegal drug activity and assaults as prohibited by General Statutes § 19a-343(c). The plaintiff, State of Connecticut maintains that the illegal drug activity described herein constitutes a "clear and present danger to the public health, safety and welfare including that of employees and patrons frequenting the subject premises and to residents and visitors to the property and the surrounding neighborhood."
The plaintiff has requested the court to order the following:
 1. A permanent injunction order restraining the defendants, their employees or agents, lessees or assigns, and all other persons from utilizing, owning, conducting, permitting, carrying on and leasing the premises known as 745 River Road, Shelton, Connecticut, Pinecrest Country Club, for the purpose of illegal drug use, assaults, and/or any other illegal activities.
2. Make a finding that the defendants are guilty of maintaining a public nuisance, as denied by Connecticut General Statutes Section § 19a-343, and order the abatement of said nuisance including, CT Page 8237 but not limited to, an order for the immediate closing of the establishment doing business as the Pinecrest Country Club, located on the premises known as 745 River Road, Shelton, Connecticut, when any event held at the location fails to comply with the conditions imposed by the court, such as the hiring of sufficient police officers as security for all events, the installation of security cameras, and the meeting with police prior to any scheduled event, for a period of one year, or upon further order of the court.
 3. Enter a permanent injunction restraining the defendants and all other persons from continuing the nuisance.
 4. Entering a permanent injunction requiring the defendants to take such further actions as the Court deems necessary and prior to abate the nuisance and protect the public health, safety and welfare.
 5. Award the reasonable costs of investigation, prosecution and any extraordinary expenses incurred by the State of Connecticut, the Town of Shelton and/or the participating law enforcement agencies in abating the public nuisance at Pinecrest Country Club, 745 River Road, Shelton, Connecticut.
 6. Award such other equitable relief that the court deems necessary and proper to abate the public nuisance.
In support of its complaint and requests for relief the plaintiff has alleged that over the "past several years" the Shelton Police Department has received seventy-five calls for assistance at the defendant real property for various complaints regarding drug possession, robberies, assaults, intoxicated persons, motor vehicle accidents and violations, as well as, the assistance of surrounding police departments and the State Police for riot control.
For the purposes of proceeding under General Statutes § 19a-343 and § 19a-343a — § 19a-343h, as amended by Public Act 99-115, the State has alleged that on July 29, 2000 and in the early morning hours of July 30, 2000, two arrests were made on defendants' premises for various drug violations, and two arrests were made on premises used or leased by the defendants for assaults as a result of a stabbing incident. The State alleges that based on the illegal drug activity and CT Page 8238 assaultive behavior resulting in the four arrests, that probable cause exists to believe that the subject premises and real property at 745 River Road, Shelton, Connecticut constitutes a public nuisance within the meaning of General Statutes § 19a-343 et seq.; a liquor nuisance pursuant to General Statutes § 19a-343a; and a public health, welfare and safety danger to the employees and patrons of the defendants and to the community.
On May 2, 2001, the defendants filed a motion to dismiss pursuant to Practice Book § 10-30 et seq. claiming a lack of jurisdiction over the subject matter. The defendants contend that an action pursuant to General Statutes § 19a-343, et seq. can only be brought if there have been "three or more arrests, or the issuance of three or more arrest warrants indicating a pattern of criminal activity and not isolated incidents, for conduct on the property . . ." The defendants maintain that the plaintiff's Complaint and accompanying Affidavit clearly alleges that of the four arrests which occurred, only two arrests occurred on the defendant's property. The remaining two arrests occurred "on the Centrix property", which is not connected to or owned by the defendants.
It is the defendants' position that since the plaintiff State of Connecticut has not alleged, and therefore, cannot prove more than two arrests on the defendants' property within 365 days preceding the commencement of this action, the court is deprived of subject matter jurisdiction.
A show cause hearing was scheduled in this matter for May 7, 2001 pursuant to General Statutes § 19a-343a(2)(b) as amended by Public Act 99-115. At that time the court granted a continuance to the State so that it could file a memorandum of law in opposition to the plaintiff's motion to dismiss. Evidentiary hearings on the motion to dismiss and the show cause hearing were consolidated and rescheduled for May 30, 2001. On May 30, 2001, the court first conducted an evidentiary hearing on the issues regarding the defendants' motion to dismiss the nuisance abatement action. Subsequent to the formal conclusion of that proceeding, the court conducted the show cause hearing on the plaintiff State of Connecticut's request for temporary injunctive relief against the defendants. The court will first address the issues regarding the defendants' motion to dismiss, as that motion addresses the court's subject matter jurisdiction, which is a threshold issue.
The testimony at the hearing on the defendant's motion to dismiss established that in 1992 the defendants and the Centrix Company entered into a verbal agreement, wherein the defendants, in exchange for the use of the Centrix parking lots for its events, would snowplow the Centrix parking lots when necessary. The Centrix Company owns the premises at 770 CT Page 8239 River Road, Shelton, Connecticut across the road from the defendant's property, which is located at 745 River Road, Shelton, Connecticut.
The general manager of Centrix testified that several years prior to July 29, 2000, Centrix considered the agreement to be at an end, as the defendants were no longer providing snowplowing services to Centrix. Centrix requested that the defendants no longer plow its parking area, but the general manager testified that no one at Centrix could remember if they ever explicitly cancelled the defendant's use of the Centrix parking lots for the defendants' events. There are no written documents evidencing the existence of any agreement between the defendants and Centrix, but Centrix has never stopped the defendant from continued use of its parking lots. Further, Centrix does allow other organizations to use its parking lot facilities upon request. The general manager also testified that Centrix was not made a defendant to this action as the owner of the parking lots where two drug-related arrests occurred; nor was Centrix contacted by state or local authorities to make any "bona fide efforts" to abate the alleged nuisance pursuant to General Statute § 19a-343(2)(f).
Officer Hubyk of the Shelton Police Department testified that on July 29, 2000 he was assigned to undercover duty to do surveillance at the Pinecrest Country Club. On July 29, 2000 a "rave techno-electronic dance party" was being held at Pinecrest Country Club. Hubyk, also a member of the Valley Street Crime Unit, was assigned to the event by his superiors, to gather intelligence regarding potential drug and alcohol related activities.
Hubyk testified he began his surveillance on the Pinecrest Country Club property without incident and later in the evening of July 29, 2000 he and five fellow undercover officers moved to the Centrix property. Hubyk was aware that the defendants' property, Pinecrest Country Club was a separate and distinct parcel of real property from the parking lot owned by the Centrix Company.
While Hubyk and his fellow officers were at the Centrix parking lot, they effectuated two arrests for illegal drug activities. Hubyk testified that he witnessed other drug related activity, but neither he nor his five fellow officers made any further arrests due to "officer safety" considerations. He also testified that he does not remember the Shelton Police Department making any other arrests at the Centrix lot for a year prior to the commencement of this nuisance abatement action. He had reviewed the Shelton Police Department's records prior to testifying and could not find any arrest records for the Centrix property at 770 River Road, Shelton, Connecticut. Hubyk also testified that the two individuals arrested in the late evening hours of July 29, 2000 or early morning CT Page 8240 hours of July 30, 2000 did not come to the Centrix lot from the Pinecrest Country Club, but rather, one individual entered the Centrix lot directly from River Road, and the other individual arrested was already parked in the lot when Hubyk arrived.
Hubyk also testified that off duty Shelton police officers had been hired by the Pinecrest to assist in security on a private duty basis. He testified that Pinecrest always hired Shelton police officers for private duty to cover its events as "It is their regular policy even prior to July, 2000". He believes that four officers were hired for this event in addition to private security guards hired by the promoter of the event at the Pinecrest.
Officer Hubyk also testified that in addition to the two drug related arrests occurring on the Centrix property, two additional arrests were made the same evening on the Pinecrest property. These arrests were for a stabbing that occurred. Hubyk was not present when the incident occurred or when the arrests for that incident were effectuated.
Lastly, Hubyk testified that he was not aware of General Statutes § 19a-343 — § 19a-343a as amended by Public Act 99-115 until he attended a training seminar in the Autumn of 2000. After attending the seminar, he conferred with his superior officers and suggested that a nuisance abatement action against the defendants might be appropriate. He testified that at no time prior to commencing the instant action did he ever contact the defendants to request that they abate any alleged nuisance. He also never met with the defendants to confer with them regarding security concerns for future events.
Jonathan Zuckerman, the president of the Shelton Yacht and Cabana Club which does business as the Pinecrest Country Club, testified that he does not have a lease with the Centrix Company for use of the Centrix parking lot. He acknowledged that a previous verbal agreement had terminated some time prior to the year 2000. While overflow parking from his property does occasionally use the Centrix lot for additional parking, he testified that this was not at his direction, nor as the result of any agreement with Centrix. It is noted that Officer Hubyk testified that on July 29, 2000 he was directed to use the Centrix lot by private security guards that were hired by the promoter of the event taking place at the Pinecrest.
Zuckerman testified that he entered into an agreement with a private promoter to lease the Pinecrest Country Club to the promoter for a "rave party" to be held on July 29, 2000 from the evening hours into the morning of July 30, 2000. The Pinecrest would provide food and beverage concessions. However, the promoter was to be responsible for the hiring CT Page 8241 of all security personnel including private off-duty Shelton police officers.
The Pinecrest has been in business since 1952, and its primary business is to cater to weddings, banquets and outings. In addition, the Pinecrest promotes its own ballroom and country western dance events, singles dances and college nights. On occasion, outdoor concerts and music festivals are also held by private promoters. The Pinecrest is licensed to sell alcoholic beverages and operates a public restaurant facility on its premises. The "rave party" held on July 29-30, 2000 was the third event of this type held at Pinecrest and Zuckerman testified that the crowd was to be limited to 2300 pre-sold tickets. In contrast, Officer Hubyk testified that, in his training and expertise, the crowd at Pinecrest on July 29, 2000, numbered approximately 5,000 persons.
Lastly, Zuckerman stated that no one from the State of Connecticut or the Shelton Police Department ever discussed any efforts to abate any alleged nuisance at the Pinecrest with him prior to commencing this action.
The promoter for the event testified that two arrests for stabbing incident did occur at the "rave party" event as a result of several individuals attempting to gate-crash the event. The promoter had hired 25 private bonded security guards for the event. During the event, several of these guards tried to prevent the gate-crashing. This resulted in a stabbing and the subsequent arrest of two individuals. He further testified that he had informed the liaison person at the Shelton Police that he expected approximately 2,000 persons to attend the event, and that the Shelton Police recommended that he hire three to four off-duty officers in addition to the private security guards.
As previously noted, the defendants have filed the motion to dismiss arguing that the court lacks subject matter jurisdiction, arguing that only two of the four arrests occurring on July 29-30, 2000 occurred on the defendants' property at 745 River Road, Shelton, Connecticut; the remaining two arrests having occurred on the Centrix property at 770 River Road. They argue that General Statute § 19a-343 requires that as a precondition to the commencement of an action for injunctive relief to abate a nuisance "there must have been three or more arrests or the issuance of three or more arrest warrants indicating a pattern of criminal activity and not isolated incidents for conduct on the property within 365 days preceding the commencement of this action." The defendants further contend that the nuisance abatement statutes must be strictly construed as they create an action that did not exist at common law and is, therefore, in derogation of the common law. CT Page 8242
The defendants further argue that the State Attorney's Office lacks standing to bring the subject action as the action by the State Attorney's Office can only be commenced once the required arrests have occurred or arrest warrants have been issued indicating a pattern of criminal activity on the subject premises over the one year period as expressed in the statute.
In its objection to the motion to dismiss the plaintiff State of Connecticut argues that the requirements of General Statute § 19a-343
have been sufficiently pleaded and that § 19a-343 empowers the Chief State Attorney's Office to commence a nuisance abatement action against the defendants. The plaintiff further argues that the arrests need not actually take place on property erected, established, maintained, used, owned or leased by the defendants. The state contends that the arrests and criminal activity need only to be causally connected to property that is erected, established, maintained, used, owned or leased by the defendants.
The state takes the position that the defendants' motion to dismiss raises of question of fact that is for the trier of fact to determine on the merits, as to whether or not the plaintiff State of Connecticut has met its burden under the statute.
Pursuant to Connecticut Practice Book § 10-31, a motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, and (3) improper venue. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Richardello v. Butka, 45 Conn. Sup. 336 (1997); Gurliacci v. Mayer,218 Conn. 531, 544 (1991). "A motion to dismiss is used to assert jurisdictional flaws that appear on the record or are alleged by the defendant in a supporting affidavit as to facts not apparent on the record." Villager Pond, Inc. v. Darien, 4 Conn. App. 178, 182 (1999);Bradley's Appeal from Probate, 19 Conn. App. 456, 461-62 (1989). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Villager Pond, Inc. v. Darien, supra at 183; Mahoney v. Lensink, 213 Conn. 548, 567 (1990). "It is the law in our courts, as it is in the federal courts, that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Pamela B. v. Ment, 244 Conn. 296, 309 (1998). "Standing is the legal right to set judicial machinery in motion. . . . If a party is found to lack standing, the court is without subject matter jurisdiction CT Page 8243 to determine the cause." City of Middletown v. P G Enterprises, Ltd.Part., 45 Conn. Sup. 435, 437 (1998).
General Statutes § 19a-343 and § 19a-343a authorize the Chief State's Attorney or a deputy chief state's attorney or assistant or deputy assistant state's attorney to commence an action to abate a public nuisance. Whether or not the allegations contained therein can be proven is for the trier of fact to decide. The court may order that a show cause hearing be held to determine whether or not there is probable cause to believe that a public nuisance exists, for the ordering of temporary relief. General Statute § 19a-343a(2)(b) and (e). The court finds that, despite the defendant's argument that the necessary number of arrests did not take place on the defendant's property with the aforementioned 365 day period, the Chief State's Attorney's Office does have standing to bring this action. The complaint on its face does allege the necessary statutory requirements for commencing the action.
Upon review of the testimony and exhibits from the hearing on the motion to dismiss, the court finds that the defendant has used the Centrix property at 770 River Road on a regular basis "for parking for events held at the Pinecrest Country Club, and, in fact, did so on the dates of July 29 and July 30, 2000. While a formal written agreement may not have existed for this use on the subject days, the use which had commenced in 1992, continued on an uninterrupted basis. Centrix had never communicated any cancellation of the use by the defendant and never prevented the continued use of its parking facility by the defendant. The defendant has knowledge of this continued use and took no actions to stop or prevent the continued use of the Centrix lots by the patrons and customers of the Pinecrest.
General Statute § 19a-343 provides that there must be "three or more arrests, or the issuance of three or more arrest warrants indicating a pattern of criminal activity and not isolated incidents, for conduct on the property documented by a law enforcement officer. . . ." The state is correct in arguing that the actual arrests need not take place on the subject property maintained, used, owned or leased by the defendant." Where statutory language is clearly expressed, as here, courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there. . . ." Paul v. MacPhee Electrical Contractors,46 Conn. App. 18, 21-22, 698 A.2d 354 (1997), quotingJohnson v. Manson, 196 Conn. 309, 315,493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S.Ct. 813,88 L.Ed.2d 787 (1986). "If the language of the statute is clear and unambiguous, there is no room for alteration of the legislative decision by the judicial branch. . . ." Ambroise v. William Raveis Real Estate,CT Page 8244Inc., 226 Conn. 757, 764-765, 628 A.2d 1303 (1993).
Clearly, the Chief State's Attorney or his assistants can bring this action, and, just as clearly, the state needs only to allege that the requisite number of arrests or issuance of arrest warrants took place for activity on property owned, used, maintained or leased by the defendant within 365 days prior to the commencement of this action.
Accordingly, the motion to dismiss the action for lack of subject matter jurisdiction by the court is hereby denied.
The second issue to be decided is whether the plaintiff State of Connecticut has met its burden to establish probable cause that a public nuisance exists at the defendant's property as defined by General Statutes § 19a-343 and § 19a-343a, as amended by Public Act 99-115.
Following the hearing on the motion to dismiss, the court conducted a show cause hearing pursuant to General Statute § 19-343a(b)(c)(e). Officer Hubyk again testified to his role in the events of July 29 and July 30, 2000, and his observations that evening. During the course of his testimony, Hubyk admitted that since 1989, he had responded to the defendant's property at the Pinecrest Country Club regarding complaints for loud music, trespassers and "some fights." It was during this testimony that the witness and his counsel conceded that "[a]lmost any bar in the state could qualify for enforcement under this statute." At no time during this testimony or his previous testimony regarding the motion to dismiss did Hubyk ever offer any specific evidence or Shelton Police Department records for any other arrests at the defendant's property within the 365 days prior to the commencement of this action. No evidence was ever established for any arrests or issuance of arrest warrants for the criminal activities specified in General Statute §19a-343(1)(2)(3)(4)(5)(6)(7)(8)(9) (10), other than the four arrests which occurred on July 29 and July 30, 2000. This is despite the allegations in plaintiff's complaint which stated that the Shelton Police, over the past several years, had received numerous calls for drug possession, robberies, assaults, intoxicated individuals, motor vehicle accidents and violations requiring the assistance of surrounding police departments and the State Police Riot Control. These allegations against the defendant were also repeated in the sworn affidavit signed by Officer Hubyk pursuant to General Statute § 19a-343a(2).
Lieutenant Arsenault of the Shelton Police Department testified that the department had investigated Pinecrest for illegal activity for the past three years. He also testified that he had attended many social events at the defendant's property as a customer. He was apprehensive about the reputation of "rave techno-electronic dance parties" for CT Page 8245 illegal behavior and, therefore, he assigned Officer Hubyk and the Valley Street Crime Unit to investigate and conduct surveillance at the defendant's property on July 29, 2000. He stated that, "Mr. Zuckerman runs a good establishment," but that this present action is a "quality of life issue" for Shelton and the neighborhood surrounding the Pinecrest Country Club.
The defendant Zuckerman once against testified regarding the types of events that he regularly runs at the Pinecrest. He also testified about the college night parties that he promoted in the months of March and April, 1998. Attendance at these events ranged from 320 persons to 550 persons, and none resulted in any arrests. At each of these events, off-duty Shelton police officers were hired by the defendant. These college night events were later canceled when, as the defendant testified, the Shelton Police began to set up roadblocks for drunken drivers; checked motor vehicle emission stickers; and began to videotape the patrons attending the events. He further testified that there are "no rave parties scheduled for the calendar year 2001."
The state is seeking temporary and permanent injunctive relief against the defendants. Temporary injunctions are issued not just because something has happened in the past, but because it is more likely than not that it will happen again in the future without the injunction. The primary purpose of a temporary injunction is to preserve the status quo until a final determination of the rights of the parties after a hearing on the merits. Clinton v. Middlesex Mutual Assurance Co.,37 Conn. App. 269, 270 (1995), quoting Olcott v. Pendleton, 128 Conn. 292,295 (1941). A temporary injunction is a preliminary judicial order, granted at the outset or during the pendency of an action, forbidding the performance of the threatened acts alleged in the complaint until the parties' rights have been finally determined by the court. Deming v.Bradstreet, 85 Conn. 650, 659 (1912).
The applicant must clearly show that protectable interests are at stake, and must establish, to a reasonable certainty, that the applicant will prevail subsequent to a final hearing on the application for a permanent injunction by showing irreparable injury and a lack of adequate remedy at law. Covenant Radio Corp. v. Ten Eighty Corp., 35 Conn. Sup. 1,2 (1977); Chappel Co. v. Frankel, 367 F.2d 197, 202 (2d Cir. 1966);Hopkins v. Hamden Board of Education, 29 Conn. Sup. 397, 417 (1971). The court must determine that a balancing of the equities favors the granting of the injunction. Waterbury Teachers Assn. v. Freedom of InformationCommission, 230 Conn. 441, 446 (1994). However, the granting of relief is not mandatory even where the danger of irreparable injury has been shown. It remains in the sound discretion of the court. EinhartIndustries, Inc. v. Amalgamated Local Union 376, U.A.W., 190 Conn. 371, CT Page 8246 406 (1983). It is also noted that mere fear or apprehension of injury is insufficient for the granting of injunctive relief. Moore v. Serafin,163 Conn. 1, 11 (1972); Nicholson v. Connecticut Half-Way House, Inc.,153 Conn. 507, 511 (1966). A real or immediate threat of that the applicant will be wronged must exist. City of Los Angeles v. Lyons,461 U.S. 95, 111 (1983). The scope of any temporary injunction will depend on the nature of the case, evidence presented at the hearing, and the particular relief sought. Emhart Industries, Inc. v. AmalgamatedLocal Union 376, U.A.W., supra 407. Issuance of an injunction is the exercise of an extra-ordinary power of the court. City of Hartford v.American Arbitration Assn., 174 Con. 472, 477 (1978).
The general rule requiring that substantial irreparable injury must be threatened before an injunction will issue is subject to certain exceptions. A violation of a zoning ordinance may authorize a municipality to seek injunctive relief in order to enforce compliance with a local zoning ordinance. This relief sought by a municipality is authorized by statute. General Statute § 8-12. To prevail in this type of situation, the municipality need only show a violation of an ordinance. Town of Farmington v. Viacom Broadcasting, Inc.,10 Conn. App. 190, 197 (1987); Town of Greenwich v. Kristoff,2 Conn. App. 515, 521 (1984); Johnson v. Murzyn, 1 Conn. App. 176, 180
(1984).
Justification for this rule is based on several factors. In acting to enforce the law (ordinance), the municipality acts on the behalf of the interests of all of its property owners to enforce their right to require conformity with the ordinance as the quid pro quo for their own submission to the restrictions imposed on their property. Johnson v.Murzyn, 1 Conn. App. 176, 180 (1984).
In addition, enactment of the statute by implication assumes that no adequate alternative remedy exists, and that the injury was in fact irreparable. In short, the legislation was necessary otherwise it would not have been enacted. Id. 180-181.
In applying the foregoing logic to the present case, the court finds that the state did not need to prove that irreparable harm would result. The plaintiff, State of Connecticut, need only to show that probable cause exists; that a public nuisance as defined by stated existed; and that temporary injunctive relief is necessary to abate the nuisance pending a final hearing. The state, however, must also provide sufficient evidence to the court to show with a reasonable certainty that it can prevail at a final hearing for permanent injunctive relief. The burden of proof the plaintiff must meet at the final hearing is "clear and convincing evidence." General Statute § 19a-343a(2)(i). CT Page 8247
Upon review of the allegations contained in the plaintiff's complaint and the evidence put forth by the plaintiff at both the motion to dismiss hearing and the show cause hearing, the court finds that the plaintiff has failed to establish probable cause that a public nuisance exists at the defendant's property, the Pinecrest Country Club. The plaintiff has established the existence of four arrests for drug activity and assaultive behavior on property owned, used, leased or maintained by the defendant within the requisite one year period prior to the commencement of this action. The plaintiff, however, has not presented sufficient evidence to convince the court that these four arrests on July 29 and July 30, 2000 constitute a pattern of criminal activity and not isolated incidents.
At a final hearing on this matter, the plaintiff must prove that the public nuisance exists on the defendant's property by a higher standard of proof which is "clear and convincing" evidence. General Statutes §19a-343a(2)(i). The "clear and convincing" standard falls somewhere between the belief required in an ordinary civil case, meaning more probable than not and the belief required to find guilt in a criminal case, which is beyond a reasonable doubt. Phrases such as "highly probable" and "substantially greater probability" that facts are true rather than false have been used to define "clear and convincing evidence" State v. Jarzbek, 210 Conn. 396, 397, 398, 554 A.2d 1094
(1989); Lopinto v. Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981); Daceyv. Connecticut Bar Ass'n., 170 Conn. 520, 536-538, 368 A.2d 125 (1976);Yamin v. Statewide Grievance Committee, 53 "Conn. App. 98, 100-101,728 A.2d 1128 (1999).
This higher standard of proof is usually reserved for civil cases involving quasi-criminal wrongdoing and fraud, or where particularly important individual rights are involved. Addington v. Texas, 441 U.S. 418,424, 99 S.Ct. 1804 (1979); Freedman v. Alamo Management Co.,24 Conn. App. 124, 130-131, 586 A.2d 619 (1991); Shaffer v. Lindy,8 Conn. App. 96, 511 A.2d 1022 (1986).
 "[C]lear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty as where this high standard is required, to sustain claims which have serious consequences or far-reaching effects on individuals, to prove willful, wrongful and unlawful acts or justify an exceptional judicial remedy, or to circumvent established legal safeguards."
CT Page 8248Shaffer v. Lindy, supra, 8 Conn. App. at 104.
The plaintiff has alleged that in the 365 days prior to the commencement of this action bearing a return date of May 29, 2001, four arrests occurred on the defendant's property and property used or leased by the defendant. These four arrests occurred within a several hour period spanning July 20 and July 30, 2000. The state has attempted to bolster its position by alleging that the Shelton Police and the State Police have responded to numerous calls for assistance at the Pinecrest over the past several years. Public Act 99-115 amending General Statutes § 19a-343 and § 19a-343a, however, sets a specific time frame of the 365 days prior to the commencement of the public nuisance abatement action, for the arrests or issuance of arrest warrants. The plaintiff's allegations of criminal activity at the defendant's property over the past several years also does not recite specific arrests or arrest warrants for the criminal activity specified in Public Act 99-115 § 1(c)(1)(2)(3)(4)(5)(6)(7)(8)(9) (10), now codified as General Statute § 19a-343(c).
In analyzing whether the court should consider criminal activity that is alleged to have occurred more than 365 days prior to the commencement of this action, the court looks to the rules of statutory construction. The same is true when ascertaining what the legislature intended when it included the words "indicating a pattern of criminal activity and not isolated incidents for conduct on the property." General Statute §19a-343 (b)(c).
This cause of action was created by the enactment of General Statutes §[1]19a-343 and §[2]19a-343a in 1998. In its original form, these statutes did not include the words "indicating a pattern of criminal activity and not isolated incidents." This phrase was added when[3]Public Act 99-115 was passed, repealing §19a-343 and § 19a-343a. Public Act 99-115 also added a provision allowing for issuance of arrest warrants within the 365 day period and not just actual arrests. This was done at the request of the Chief State's Attorney whose designee testified before the Judiciary Committee on February 8, 1999. Mr. Morano, Deputy Chief State's Attorney, testified that, due to ongoing investigations of certain premises, his office many times could get arrest warrants issued within the 365 days, but that the actual arrests would take place at a later date so as to not "tip our hand" and reveal the ongoing investigation. This testimony took place during Judiciary Committee hearings on HB6653, An Act Concerning Nuisance Abatement and the Quality of Life. Morano also requested that the types of crimes that qualified for nuisance abatement should be expanded from the original seven categories to ten categories as specified in Public Act 99-115 CT Page 8249 § 1(c). This indicates that the plaintiff and the legislature were very much aware of the 365 day time period. The legislature's passage of Public Act 99-115 without any modification to that time period indicates to the court that arrests prior to the 365 days prior to the commencement of the action should not be considered in the present case.
Senator Williams introduced HB6653 to the Senate on May 25, 1999 and urged its passage after favorable reports by the Committees on Judiciary and Appropriations. In his comments, he stated, "It's not just an arrest warrant for any crime, but for a variety of serious crimes that are outlined in the bill." Senator Penn, in remarking on the bill, stated, "I think it's another great crime-fighting tool in helping our urban cities."
Representative Doyle from the 28th Assembly District moved passage of Public Act 99-115 in the House of Representatives. He stated, "This bill is an outshoot from last year. We passed the main nuisance abatement act. The warrants have to indicate a pattern of criminal activity and not isolated incidents." He continued, "And this — — the language regarding the pattern of criminal activity does not apply to the three arrests. It simply applies to the three arrest warrants. And the real purpose of this language for the arrest warrants is to clarify that they get three arrests — — — that indicate a pattern on one property tied into, for instance, it could be gang activity. It could be three different types of activity, but it is tied into one person or one group."
Later, in his remarks, Representative Doyle, in response to a question regarding a time frame for the three arrests or issuance of three arrest warrants, stated that the limitation or time period should remain, as passed in General Statute § 19a-343; that being a one year period. He again confirms the intent of the legislature when he states to Representative Belden, 113th Assembly District, "On line 16 [of the bill] it does say within the 365 days proceeding commencement of action." House Bill Number 6653, as amended, passed the House of Representatives with 141 members voting for passage and zero voting against it.
Further study of the legislative history of General Statutes §19a-343 and § 19a-343a, which was repealed and amended by Public Act 99-115, indicates that the original purpose of the nuisance abatement statutes was to remedy urban blight. Representative Doyle, in 1998, while commenting on HB5073, remarked, "The intent of this bill really is directed at basically premises that are primarily abandoned or neglected." Supervisory Assistant State's Attorney Christopher Malany, in his testimony before the Judicial Committee regarding HB5073, stated that the bill would allow the State of Connecticut to take action against "crack houses, massage parlors and betting parlors. HB5073 will force CT Page 8250 owners to clean up blighted properties, and will give affected neighborhoods a real chance to ease the canker of urban blight." It does not appear from this review that Public Act 99-115 and its predecessors, General Statutes § 19a-343 and § 19a-343a, ware enacted for the purpose of closing every liquor establishment in Connecticut as conceded by the plaintiff, or by closing the defendant's business, where four arrests occurred within a several hour period on July 29 and July 30, 2000.
General Statutes § 19a-343 and § 19a-343a, as later repealed and amended by Public Act 99-115, create an action that did not exist at common law. The court, therefore, must approach the questions raised in this matter according to the well-established principles of statutory construction designed to further the fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. State v. Kozlowski, 199 Conn. 667, 673, 509 A.2d 20 (1986). The court must look to the words of the statute; to the legislative history; the circumstances surrounding its enactment; to the legislative policy it was designed to implement; and to its relationship to existing legislation and any common law principles governing the same subject matter. Dart Bogue Co. v. Slosberg, 202 Conn. 566, 572, 522 A.2d 763
(1987); Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583,589, 522 A.2d 771 (1987); State v. Jason B., 248 Conn. 543, 729 A.2d 760
(1999).
With any issue of statutory interpretation, our initial guide is the language of the statute itself. Frillici v. Westport, 231 Con. 418, 430-432, 650 A.2d 557 (1994). If its language in drafting and enacting a statute is clear and unambiguous, there is no room for alteration of the legislative decision by the judicial branch. . . . Ambriose v. WilliamRaveis Real Estate, Inc., supra 226 Conn. 764-765. It is assumed that the words themselves express the intent of the legislature. Mazur v. Blum,184 Conn. 116, 118-119, 441 A.2d 65 (1981). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." State v. Perruccio, 192 Conn. 154, 163 n. 4, 471 A.2d 632
(1984).
"A corollary of the above rule of construction is that the intent of the legislature is to be found not in what the legislature meant to say, but in the meaning of what it did say." Burnham v. Administrator,184 Conn. 317, 325, 439 A.2d 1008 (1981). The words used in statutes "shall be construed according to the commonly approved usage of the language." Simmonette v. Great American Ins. Co., 165 Conn. 466, 471,338 A.2d 453 (1973); Caulkins v. Petrillo, 200 Conn. 208, 215-216,510 A.2d 1329 (1986). CT Page 8251
Public Act 99-115 § 1(b)(c) states that there must be an indication of a pattern of criminal activity and not isolated incidents. Merriam-Webster's Collegiate Dictionary (10th Edition, 1993) defines "pattern" as "a reliable sample of traits, acts, tendencies or other observable characteristics of a person, group or institution." It is "behavior," and "frequent or widespread incidence." The word "isolated" is defined as "occurring alone or once: unique: sporadic." The court finds that the four arrests at the Pinecrest and the Centrix parking lot on July 29 and July 30, 2000 were isolated incidents and do not indicate any pattern of criminal activity at the Pinecrest.
In determining the legislature's intent, the court must look to the legislative history and the development of the act in question, as well as, any subsequent legislative action through amendments. AmericanLaundry Machinery v. State, 190 Conn. 212, 214-215, 459 A.2d 1031
(1983). The title of the act is often significant and a valuable tool in statutory construction. State v. Kozlowski, supra, 199 Conn. 678. "The statement of purpose of a bill on its introduction into the legislature may be considered in determining the legislative intent." Id. 679. "It is recognized that the statement of the legislator who reports the bill out of committee carries particular weight and deserves careful consideration." Robinson v. Unemployment Security Board of Review,181 Conn. 1, 8-9, 434 A.2d 293 (1980).
It is a well settled rule of law that civil statutes which are in derogation of the common law must be strictly construed. Guille v.Guille, 196 Conn. 260, 265-266, 492 A.2d 175 (1985); Ahern v. New Haven,190 Conn. 77, 82, 459 A.2d 118 (1983). "When a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction, and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of its construction." Edmundson v. Rivera, 169 Conn. 630, 633 n. 125,363 A.2d 1031 (1975).
The court has weighed the pleadings, the evidence, the legislative history and the law, as it applies to this matter, and without reservation, the court denies the plaintiff's request for any temporary relief. The court finds that the incidents in question are not the types of incidents the legislature intended to prevent when enacting General Statutes § 19a-343 and § 19a-343a and their subsequent replacement by way of Public Act 99-115. The incidents at the Pinecrest were the only incidents which occurred between May 29, 2000 and the commencement of this action on May 29, 2001, that resulted in arrests or the issuance of arrest warrants for criminal activity specified in Public Act 99-115 § 1(c)(1)(2)(3)(4)(5)(6)(7)(8)(9) (10). The court additionally finds that these incidents did not indicate a pattern of CT Page 8252 criminal activity in that they occurred within several hours of each other on July 29 and July 30, 2000. They are "isolated incidents," when applied to the subject legislation.
Lastly, the court has concern that the commencement of this action against the defendant might be viewed by some as one of selective enforcement against this particular establishment. Justice Scalia, in a dissenting opinion in Morrison v. Olsen, 487 U.S. 654, 705-706, wrote, "That is what this suit is about. Power." Id. 699. "How much power is too much? Where do we stop? Only someone who has walked in the field of law enforcement can fully appreciate the vast power and immense discretion that are placed in the hands of a prosecutor with respect to the objects of his investigation." Id. 727. Justice Robert Jackson commented in 1940 when he was the United States Attorney General, "With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone." Id. 727; R. Jackson, the Federal Prosecutor, Conference of U.S. Attorneys, April 1, 1940. General Statutes § 19a-343
and § 19a-343a are valuable legislative tools in law enforcement when used wisely. It can be used for the good of the urban and suburban communities to rid our neighborhoods of urban blight and continuing criminal activity by individuals, organizations, gangs and uncaring or absentee landlords who choose to ignore the presence of these activities at their properties. However, the prosecuting authority needs to use better judgment and discretion when choosing to apply this law. As Justice Scalia stated in his dissent, "The notion that every violation of the law should be prosecuted is an attractive one. Let justice be done though the Heavens may fall." Morrison v. Olson, supra, 487 U.S. 732 (Scalia, J., dissenting).
This matter is further continued for the scheduling of a final evidentiary hearing to be held within 90 days of this show cause hearing pursuant to General Statute § 19a-343a(2)(e)(i).
The Court
By Arnold, J.