GLORIA SCHAFFER *v.* GERALD LINDY
(3038)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 6, 1985—decision released July 8, 1986

*Elizabeth A. Gallagher,* with whom, on the brief, was *William F. Gallagher,* for the appellant (defendant).

*William F. Dow III,* with whom, on the brief, were *F. Herbert Gruendel* and *Shirley V. Hoogstra,* law student intern, for the appellee (plaintiff).

SPALLONE, J. The defendant has appealed from a judgment rendered for the plaintiff after a trial to the court. The first and second claims of error allege that the trial court erred when it admitted into evidence a sworn written statement that the defendant contends should have been excluded as hearsay evidence. The defendant's third claim of error is that the trial court utilized the incorrect standard of proof to support an award of treble damages pursuant to General Statutes § 52-564.[1]

In his first claim of error, the defendant directly attacks the admission of the alleged hearsay evidence and in his second and third claims of error he contends that without the hearsay evidence there was insufficient evidence to find for the plaintiff, and that there was insufficient proof to sustain an award of treble damages.

---

[1] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

On July 24, 1978, the home of the plaintiff, Gloria Schaffer, was burglarized. The stolen property included a McIntosh stereo, a gold Tiffany bracelet, a stuffed leather pig and a diamond ring. The ring, a three carat emerald cut diamond set in platinum, was purchased in 1948 for $3000. The plaintiff brought this action in three counts alleging conversion of the ring and the knowing receipt and concealment of it, and claiming, in her prayer for relief, money damages, punitive damages, and treble damages pursuant to General Statutes § 52-564.

The trial court found the following facts. In July, 1978, the Connecticut state police were investigating a burglary which had occurred in Bethany. During the course of that investigation, Michael Marple came to the police headquarters and voluntarily gave a written statement regarding the burglary at the home of the plaintiff. In his statement, he related that approximately one week prior to August 3, 1978, Robert Mazzacane came to Marple's residence with the items stolen from the plaintiff and asked if Marple could sell the items. Marple and Mazzacane then spent the night at the home of Albert and Deborah DeCato, where discussions took place regarding the stolen property. The following day Marple took the stolen jewelry to the defendant's antique shop, known as Lindy's Antique Shop. Marple entered the shop while Mazzacane and another person, Andrew Johns, waited in a car. In his statement, Marple stated he sold the ring to the defendant at that time for $250, and then a few days later he went back and sold the gold bracelet also to the defendant for $250. He described the sale as having taken place with the two brothers who operated Lindy's Antique Shop. At the time of the respective sales, he was told by one of the brothers that the ring would be sold in Europe and that the bracelet would be melted and disposed of as bullion. Marple also disclosed that

the stereo was sold to an individual, whom he identified, for $500. Albert DeCato saw the bracelet and stereo in the possession of Marple and Mazzacane. Deborah DeCato saw the ring, bracelet and the other items stolen from the plaintiff in the possession of Marple, Mazzacane and Johns and was told by those individuals that the ring was sold to Lindy's Antique Shop.

As a result of the information obtained from Marple, the police searched Lindy's Antique Shop and found the missing bracelet in a safe in a back room, although they could not find the diamond ring. The defendant stated that he had purchased the bracelet on August 3, 1978, but had not purchased the ring. He stated that he paid $550 in cash, but did not make a record of the transaction and did not seek proof of ownership from the seller. The defendant was arrested for receipt of stolen goods and was convicted of larceny in the first degree.

The plaintiff presented evidence that the defendant, Gerald Lindy, had received and concealed the ring, knowing that it was stolen. In addition to her previously described testimony, Deborah DeCato testified that she was present and had witnessed Marple selling the stereo to a person named Mark, who lived in Orange. The defendant did not object to Mrs. DeCato's testimony regarding the sale of the ring and bracelet to the defendant, but did object when the witness testified that the three men acknowledged selling other stolen items to Lindy in the past. The objection was ruled untimely and no exception was taken.

Another witness, William Gordon, a retired state police officer, testified that Marple had given a sworn statement outlining Marple's participation in the disposal of the stolen property. On the basis of the statement, Gordon applied for the search warrant that led

to the recovery of some of the stolen items. Marple's statement indicated that he had sold the items to the defendant. Marple's sworn statement was admitted into evidence under the declaration against pecuniary interest exception to the hearsay rule. The court found the issues for the plaintiff and rendered judgment that the plaintiff recover treble damages from the defendant in the amount of $26,988.

The defendant's claim that the court erred in admitting Marple's sworn statement is predicated upon the fact that the plaintiff failed to establish the unavailability of Marple as a prerequisite to the admission of the statement, and further failed to establish that the statement was trustworthy. The defendant concedes that Marple's sworn statement was a declaration against both his penal and pecuniary interest. See, e.g., *Ferguson* v. *Smazer,* 151 Conn. 226, 232, 196 A.2d 432 (1963). The defendant concedes, also, that because Marple was incarcerated, he was physically unavailable to testify, but argues that his testimony was available by way of deposition which precluded the use of his sworn statement. We disagree.

In determining the unavailability of a witness where the admissibility of a statement against penal interest is in issue, Rule 804 (a) of the Federal Rules of Evidence[2] is instructive. See, e.g., *State* v. *Frye,* 182 Conn. 476, 482–83, 438 A.2d 735 (1980). Subsection (5) of the

[2] Rule 804 (a) lists five situations in which the declarant witness may be considered unavailable: "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b) (2), (3), or (4), his attendance or testimony) by process or other reasonable means."

rule provides that a declarant witness may be considered unavailable if he is "absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b) . . . (3), . . . his attendance or testimony) by process or other reasonable means."[3] This particular provision of the rule was " 'designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable.' " *United States* v. *Gabriel,* 715 F.2d 1447, 1451 (10th Cir. 1983), quoting H.R. Rep. No. 650, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 7051, 7075, 7088. "[I]t would be a mistake [however] to read the phrase, 'unable to procure his . . . testimony' by deposition, woodenly. There may be instances in which it is impracticable but not legally impossible to obtain a deposition. Where a relatively small claim, for example, would be overbalanced by the cost of a foreign deposition or where the evidence comes to light during the trial and a continuance is not possible, the proponent can be found to be 'unable' to procure the deposition. This interpretation is enhanced by reading the phrase 'reasonable means' to cover both depositions and physical procurement of the witness—a parsing consistent with the clause's syntax." Weinstein, Evidence § 804 (a) [01].

The ultimate question of the availability of a witness is a question of fact to be determined by the trier. *Fontaine* v. *Coyle,* 174 Conn. 204, 209, 384 A.2d 616 (1978). Although the rules of evidence regarding the use of out of court statements when a witness is unavailable apply to both civil and criminal cases; *Reilly* v. *DiBianco,* 6 Conn. App. 556, 564, 507 A.2d 106

---

[3] Subsection (b) (3) of Rule 804 contains an exception to the hearsay rule for statements against the declarant's pecuniary, propietary or penal interests.

(1986); the differences in procedural rules for compelling the attendance of witnesses in the two types of cases, and the overriding constitutional considerations present in the criminal context,[4] lead to varying connotations of unavailability depending on the type of circumstances involved in each case. Weinstein, supra.

Cognizant of the fact that Marple was incarcerated in Massachusetts at the time of trial, the court determined as a matter of fact that Marple was unavailable. A review of the transcript reveals that the trial court's determination was based on a deliberate review of the particular circumstances present, and its interpretation of the applicable legal authorities.

Rule 804 (a) (5) requires that the witness be absent from the hearing as the first prerequisite for the admission of such a statement. It is conceded that Marple was absent. The second prerequisite is that the proponent of the statement be unable to procure the testimony of the witness "by process or other reasonable means." Such a statement therefore is admissible if the testimony cannot be had by "reasonable means" *or* by process which is *reasonable*. The word "other" indicates that process, as well as other methods of obtaining testimony, be reasonable. Even if the taking of a deposition is considered "process," the obtaining of it must be "reasonable" in light of the particular facts and circumstances surrounding the inability of the party seeking the admission of the statement to procure the attendance of the witness. The trial court, considering the facts of the incarceration of the witness in another state, the civil nature of the case, the amount of damage at issue in this controversy, and the effort, time and cost involved in taking the deposition of a person

---

[4] In a criminal case, the right of an accused to confront his opponent is a constitutional right which imposes a stringent burden upon a prosecutor to procure a witness' attendance or testimony. See *Barber* v. *Page,* 390 U.S. 719, 724-25, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968).

incarcerated in a prison located in another state, could reasonably have concluded that Marple was "unavailable" for the purpose of allowing his sworn statement into evidence. It is impossible to provide a rule with written parameters sufficient to govern all cases. It cannot be stated that depositions should be taken if a witness is incarcerated in neighboring states but not in Alaska or Hawaii, or that depositions should be attempted or taken if the amount at stake is a given dollar amount, but not if they are lesser than that dollar amount. Such subsidiary questions and their resolution should be left to the discretion of the trial court.

The court's conclusion was consistent with the principles and policies stated above, which are to be considered when deciding such a question. We conclude, therefore, that the trial court did not exceed or abuse the discretion vested in it in finding the witness unavailable for the purpose of admitting his sworn statement.

The defendant's claim that there was no showing that Marple's sworn statement was trustworthy must also fail. The testimony of Deborah DeCato and Gordon confirm that the statement led to the recovery of most of the articles taken in the burglary. The items were located at the sites indicated in the statement and this fact, along with the other times, places and events mentioned in the statement and corroborated by the witnesses, tended to enhance the reliability of the statement. The question of trustworthiness is also one of fact to be determined by the trier, and a court is given broad discretion to determine whether a third party declaration against penal interest is trustworthy. *State* v. *DeFreitas,* 179 Conn. 431, 452, 426 A.2d 799 (1980). Marple's sworn statement had more than sufficient indicia of trustworthiness, and we cannot say that the trial court's finding was clearly erroneous.

Regarding the defendant's next claim as to the sufficiency of the evidence, we conclude that with Marple's statement the trier had more than ample evidence to support its findings and conclusions. Even without the statement, however, our review of the record, transcript and evidence clearly indicates that there was a sufficient basis for the court's findings as to the elements of knowingly receiving and concealing the ring stolen from the plaintiff to support its judgment.

The defendant's final claim relates to the standard of proof required to support an award of treble damages pursuant to General Statutes § 52-564. It is clear that an award of treble damages is an extraordinary statutory remedy. See *Alaimo* v. *Royer,* 188 Conn. 36, 43, 448 A.2d 207 (1982); *DeMilo* v. *West Haven,* 189 Conn. 671, 676, 458 A.2d 362 (1983). Also, when treble damages are sought pursuant to § 52-564, the plaintiff is not required to prove his case beyond a reasonable doubt. *Munson* v. *Atwood,* 30 Conn. 102, 103–104 (1861). Generally, facts which constitute a crime need not be proven beyond a reasonable doubt if they are at issue in a civil action. 30 Am. Jur. 2d, Evidence § 1169. It is ordinarily sufficient in civil cases to prove the existence of the criminal act by a preponderance of the evidence. *Mead* v. *Husted,* 52 Conn. 53, 56 (1884). "However, clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, as where this high standard is required to sustain claims which have serious consequences or harsh or far-reaching effects on individuals, to prove willful, wrongful and unlawful acts, to justify an exceptional judicial remedy, or to circumvent established legal safeguards . . . ." (Footnotes omitted.) 32A C.J.S., Evidence § 1023; see, e.g., *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 368 A.2d 125 (1976).

We conclude, therefore, that clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to § 52-564. The plaintiff raised properly her claim for treble damages in the third count of her complaint. Having found the defendant liable to the plaintiff, the trial court concluded that the defendant was subject to the provision of § 52-564. The court's memorandum of decision, however, does not set out the standard of proof employed in reaching this conclusion. Where a memorandum "is silent as to the standard of proof used, it will be assumed [in a civil matter] that the one ordinarily applied in most civil cases, that of a fair preponderance of the evidence, was used. If the trial court neither states nor implies that it is applying the proper standard of proof, it is impossible for an appellate court to determine whether the trial court, had it applied the required standard of proof, would still have rendered judgment as it did. . . . In such instances, a new trial is necessary." (Citations omitted.) *Kavarco* v. *T.J.E., Inc.,* 2 Conn. App. 294, 297–98, 478 A.2d 257 (1984).

There is error in part, the judgment is set aside and the case is remanded for a new trial limited to the issue of whether treble damages should be awarded pursuant to General Statutes § 52-564.

In this opinion the other judges concurred.