WILLIAM A. STUART ET AL. *v.* KENNETH J.
STUART, JR., ET AL.
(AC 25642)

McLachlan, Robinson and Pellegrino, Js.

---

Argued September 19, 2008—officially released January 20, 2009

*Sandra J. Akoury,* with whom, on the brief, was *Paul J. Pacifico,* for the cross-appellants (plaintiffs).

*William F. Gallagher,* for the cross-appellees (named defendant et al.).

*Opinion*

McLACHLAN, J. The plaintiffs, William A. Stuart and Jonathan Stuart, filed a cross appeal from the judgment of the trial court, rendered after a trial to the court, challenging various rulings with respect to their claims against the defendant Kenneth J. Stuart, Jr. (Stuart, Jr.), their brother, individually and in his capacities as trustee of a trust established by their father, as executor of their father's estate and as general partner of Stuart & Sons, L.P., and against the defendants Deborah Christman, Christman Stuart Interiors, LLC, and Stuart & Sons, L.P.[1] In essence, the plaintiffs claimed at trial that Stuart, Jr., used his fiduciary position to misappropriate millions of dollars through numerous illegal transactions for his direct and indirect benefit, the result of which deprived the plaintiffs of their inheritance from their father. In their cross appeal, the plaintiffs claim that the court awarded them insufficient damages because it (1) failed to shift the burden of proof to Stuart, Jr., with respect to certain transactions undertaken in his fiduciary capacities, (2) applied an incorrect burden of proof with respect to their statutory theft claim, (3) failed to render judgment in their favor on the fraudulent transfer count, (4) awarded prejudgment interest at the rate of 7.5 percent instead of 10 percent, (5) concluded that Christman Stuart Interiors, LLC, was entitled to a setoff even though it had not pleaded the right of setoff in its answer, (6) failed to award additional damages despite the submission of

---

[1] With the exception of Christman, all of the defendants filed an appeal from the court's judgment on July 19, 2004. They withdrew their appeal on May 4, 2007.

sufficient evidence, (7) failed to disinherit Stuart, Jr., from their father's estate, (8) precluded them from presenting detailed evidence on the issue of damages[2] and (9) awarded attorney's fees, accounting fees and prejudgment interest to their father's estate rather than to them individually. We affirm the judgment of the trial court.

From the evidence presented at trial, the court found the following facts. The plaintiffs and Stuart, Jr., are the only children and heirs of Kenneth J. Stuart, Sr. (Stuart, Sr.). In 1991, Stuart, Sr., executed an estate plan including the establishment and funding of a trust and the execution of a will that, upon his death, would have distributed his assets equally among his three sons. Stuart, Sr., had been the art director of Curtis Publishing Company, the publisher of The Saturday Evening Post, and, subsequently, the art director of the Reader's Digest. He had collected many antiques and a significant art collection, including several famous works by Norman Rockwell.

In July, 1992, Stuart, Sr., was admitted to Norwalk Hospital. At that time, he was unable to give a medical history, and the hospital records indicated that he was suffering from a deteriorating mental condition. His physical and mental health progressively worsened

---

[2] The plaintiffs claim that "the trial court erred in preventing them from offering more detailed evidence on several points and that this error prevented them from obtaining the true measure of damages against [Stuart, Jr.], as described throughout this brief." This constitutes the plaintiffs' entire argument on this issue; in their appellate brief, they provide no references to the transcripts, no citations to case law and no legal analysis. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007). Accordingly, we decline to review that issue. We note, however, that the court heard evidence over twenty-five days and received twelve boxes of exhibits.

until his death in February, 1993. Less than four months before his death, a series of transactions took place that materially altered the estate plan. On November 4, 1992, Stuart, Sr., and Stuart, Jr., executed documents that formed Stuart & Sons, L.P. They were the only general partners; the plaintiffs had no interest in the partnership and were not aware that it had been created. Stuart, Sr., by bill of sale, conveyed most of his personal property to the partnership. Stuart, Jr., as trustee, through various transactions, transferred properties located in Wilton at Ridgefield Road, the former residence of Stuart, Sr., and at Hurlbutt Street, a new acquisition by the trust, to the partnership. As a consequence of those transactions, almost all of the assets of Stuart, Sr., were owned by the partnership, and the trust had few or no assets.

Sometime in August, 1993, after the death of Stuart, Sr., Stuart, Jr., told the plaintiffs about the creation and funding of Stuart & Sons, L.P. The partnership leased the Ridgefield Road and Hurlbutt Street properties and collected the rents. It acquired two additional properties in Wilton and, in 1993, formed a limited liability company to own a furniture store in Wilton known as Eldred Wheeler of Wilton, LLC (Eldred Wheeler), which later became known as Talbot House. In 1995, Stuart, Jr., hired Christman to manage the furniture business. In June, 2000, they married. At about that time, Talbot House closed its business and Stuart, Jr., and Christman opened a new business, Christman Stuart Interiors, LLC, in Ridgefield. A portion of the inventory of Talbot House was transferred to Christman Stuart Interiors, LLC.

From 1991 to 2003, thousands of transactions were undertaken by Stuart, Jr., as trustee, executor and general partner of Stuart & Sons, L.P. Most of the transactions occurred as part of the operations of the partnership, including its sale of the Hurlbutt Street

property to Stuart, Jr., and Christman for $900,000 in April, 2001.[3] During that twelve year period, Stuart, Jr., commingled funds and assets of the trust and the partnership and his own assets to such an extent as to hinder any proper accounting. His failure to keep adequate records and his use of the trust assets for his benefit further complicated any accurate accounting of his fiduciary obligations.

The plaintiffs commenced the present action in 1994. In their operative nine count complaint filed March 10, 2003, the plaintiffs alleged that Stuart, Jr., exercised undue influence over Stuart, Sr., when real estate was purchased with trust assets and when Stuart & Sons, L.P., was created and funded, and that Stuart, Sr., lacked the mental capacity to understand those transactions. They additionally alleged that Stuart, Jr., breached his fiduciary duties as trustee, executor and general partner by mismanaging assets, failing to maintain records and self-dealing. The plaintiffs further claimed that the transfer by Stuart, Jr., of the Hurlbutt Street property to Christman was a fraudulent conveyance, that the actions of Stuart, Jr., constituted statutory theft pursuant to General Statutes § 52-564 and that Stuart, Jr., Christman and Christman Stuart Interiors, LLC, had been unjustly enriched by the misappropriation of the assets of the trust and estate. In their prayer for relief, the plaintiffs requested that the court impose a constructive trust on the assets of Stuart & Sons, L.P., set aside the conveyance of the Hurlbutt Street property, award accounting fees and award money damages, including treble damages and attorney's fees.

During a twenty-five day trial, the court heard testimony from several witnesses and admitted twelve boxes of exhibits. Following trial, the parties submitted

---

[3] Immediately thereafter, Stuart, Jr., conveyed his interest in the Hurlbutt Street property to Christman.

extensive posttrial briefs summarizing their respective positions. On June 28, 2004, the court issued its seventy-eight page memorandum of decision in which it painstakingly evaluated the evidence with respect to each of the plaintiffs' claims and set forth the applicable remedies. The court made the following findings and conclusions with respect to the plaintiffs' claims: (1) Stuart, Sr., was not mentally competent to execute the partnership documents and the other instruments that transferred his assets into Stuart & Sons, L.P., in November, 1992; (2) the creation of the partnership and the resulting transfer of assets was the result of undue influence by Stuart, Jr., over Stuart, Sr.; (3) Stuart, Jr., owed a fiduciary duty to the plaintiffs in his capacities as trustee, executor and general partner of Stuart & Sons, L.P., the limited partnership that acquired almost all of the assets of Stuart, Sr.; (4) Stuart, Jr., breached his fiduciary duties through the commingling of funds and assets, by failing to maintain adequate records of his stewardship and by using trust assets for his benefit; (5) Stuart, Jr., proved by clear and convincing evidence that certain expenditures were business related and were not improper personal expenditures; (6) the transfer of the Hurlbutt Street property to Stuart, Jr., and Christman for the consideration of $900,000 did not constitute improper self-dealing; (7) the plaintiffs failed to meet their burden of proof on their fraudulent conveyance claim; (8) the plaintiffs were required to prove their statutory theft claim by clear and convincing evidence; and (9) Christman Stuart Interiors, LLC, was unjustly enriched in the amount of $118,671, and was entitled to a setoff of $68,621.48.

On the basis of those findings and conclusions, the court set forth the following remedies: (1) the creation of Stuart & Sons, L.P., was declared null and void; (2) all assets and liabilities of the partnership were to be

transferred to the estate of Stuart, Sr., and a construc-
tive trust was established over an undivided two-thirds
of the assets and liabilities until the transfer was com-
pleted; (3) damages for the breach of fiduciary duties
by Stuart, Jr., totaled $1,062,332.25, and he was to pay
that amount to the estate of Stuart, Sr.; (4) the plaintiffs'
claim for fraudulent transfer of the Hurlbutt Street prop-
erty was dismissed; (5) with respect to the plaintiffs'
statutory theft claim, an additional award of
$496,452.50, representing treble damages for certain
breach of fiduciary duty claims, was to be paid to the
estate of Stuart, Sr.; (6) Christman Stuart Interiors, LLC,
was unjustly enriched in the amount of $50,049.52, pay-
able to the estate of Stuart, Sr.; (7) an award of attor-
ney's fees was made, but the amount was to be
determined at a subsequent hearing; (8) prejudgment
interest in the amount of $636,743.63, calculated at a
rate of 7.5 percent, was awarded to the estate of Stuart,
Sr., for the breach of fiduciary duty claims; and (9) an
award of $180,000, for accounting fees, incurred to
prove the breach of fiduciary duty claims, was to be
paid to the estate of Stuart, Sr. Accordingly, the court
rendered judgment for money damages against Stuart,
Jr., in the amount of $2,375,528.38, and against
Christman Stuart Interiors, LLC, in the amount of
$60,539.19, to be paid to the estate of Stuart, Sr. This
cross appeal followed the defendants' now with-
drawn appeal.[4]

I

The plaintiffs first claim that the court improperly
failed to shift the burden of proof to Stuart, Jr., for
every transaction undertaken in his fiduciary capacities
as trustee and executor. Specifically, the plaintiffs argue

[4] The plaintiffs filed a motion for reargument of the court's decision on
July 16, 2004. The court filed its memorandum of decision on the motion
for reargument on January 28, 2005, in which it denied the plaintiffs' claims
for additional or different relief.

that Stuart, Jr., bore the burden of proving by clear and convincing evidence that he acted fairly in every action he took on behalf of the illegally formed Stuart & Sons, L.P., as well as its subsequently created businesses, Eldred Wheeler, Talbot House and Christman Stuart Interiors, LLC. The plaintiffs claim that each of those entities was created using estate assets that were completely controlled by Stuart, Jr., as trustee.

In support of this argument, the plaintiffs refer to three instances in which they claim that the court failed to shift the burden of proof to Stuart, Jr. They first claim that the court, in determining the fair market value of the Hurlbutt Street property, simply accepted the testimony of Stuart, Jr., that he expended $130,000 of estate funds on repairs to the property. This testimony, they assert, does not constitute proof by clear and convincing evidence. The second instance also relates to the Hurlbutt Street property: "In deciding the issues related to the transfer of Hurlbutt Street, [the plaintiffs] maintain that the court erred by requiring them to meet the burden of proof by clear and convincing evidence, rather than requiring Stuart, Jr., to meet this high standard, which should have been required of him because of his fiduciary status."

In its memorandum of decision, the court discussed the sale of the Hurlbutt Street property from the partnership to Stuart, Jr., and Christman in a section analyzing the plaintiffs' breach of fiduciary duty claims. In that section, the court first concluded that Stuart, Jr., did owe a fiduciary duty to the plaintiffs as the trustee of the trust Stuart, Sr., established and, subsequently, as the executor of his estate. The court also concluded that, given the circumstances of the creation of Stuart & Sons, L.P., Stuart, Jr., as the general partner of the partnership, owed a fiduciary duty to the beneficiaries of the estate of Stuart, Sr. Because of that fiduciary relationship, the court stated that Stuart, Jr., had the

burden of proving fair dealing by clear and convincing evidence.[5] The court reiterated that burden of proof standard several times in its lengthy discussion relative to the plaintiffs' breach of fiduciary duty claims. It is therefore apparent that the court was aware of and applied the proper burden of proof with respect to Stuart, Jr.

Furthermore, it is noted that the plaintiffs did not challenge the court's findings that the fair market value of the Hurlbutt Street property was $970,000, that no broker's commission had been paid and that a commission would have ranged between $40,000 and $60,000. For those reasons, the court concluded that the sales price of $900,000 was not so low as to be the product of improper self-dealing. In determining the fair market value of $970,000, the court specifically stated that it was accepting the appraisal amount of one of the defendants' appraisers, John Lutter. The memorandum of decision, although noting the original purchase price and referring to the testimony of Stuart, Jr., that repairs were made to the property that cost between $100,000 and $130,000, does not indicate how or if the cost of the repairs factored into its determination of fair market value. Therefore, the plaintiffs' claim that the court improperly accepted the testimony of Stuart, Jr., with respect to the cost of the repairs in determining the fair market value of the Hurlbutt Street property, finds no support in the court's decision.

The third instance of the claimed failure of the court to shift the burden of proof relates to the count of

[5] Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. Once a fiduciary relationship is found to exist, the burden of proving fair dealing shifts to the fiduciary. Furthermore, the standard of proof for establishing fair dealing is not the ordinary fair preponderance of the evidence standard. The fiduciary is required to prove fair dealing by clear and convincing evidence. See *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996).

unjust enrichment. Specifically, the plaintiffs argue that the court's award of a setoff to Christman Stuart Interiors, LLC, for certain expenses it paid that were properly attributable to Stuart & Sons, L.P., was improper because no checks were produced to substantiate the accounting records, and it was the burden of Stuart, Jr., to show payment by clear and convincing evidence. The plaintiffs contend that the court, in determining the amount of the setoff, should not have scrutinized the various transactions, given the fact that the burden had shifted to the fiduciary. They claim that the court "should have . . . accepted the plaintiffs' calculations" without any further inquiry.

The plaintiffs' argument fails for several reasons. First, as the court noted, the unjust enrichment claim essentially was one pursued by the plaintiffs on behalf of Stuart & Sons, L.P., against Christman Stuart Interiors, LLC. The complaint did not allege nor was the case presented on the theory that the "corporate veil" of Christman Stuart Interiors, LLC, a limited liability company, should be pierced and the individual members be held liable.[6] There was no fiduciary relationship between Christman Stuart Interiors, LLC, and the plaintiffs, and, therefore, the burden of proving fair dealing

---

[6] General Statutes § 34-133 (a) provides in relevant part: "[A] person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company."

General Statutes § 34-134 provides: "A member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company, except where the object of the proceeding is to enforce a member's or manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement." The court noted that the operating agreement of Christman Stuart Interiors, LLC, had not been submitted as evidence.

by clear and convincing evidence did not shift to Christman Stuart Interiors, LLC.

Second, because the individual members of the limited partnership could not be held liable, the unjust enrichment claims against Stuart, Jr., and Christman, as the individual members of Christman Stuart Interiors, LLC, were dismissed. That finding has not been challenged on appeal. Third, the court found that "the plaintiffs did not seriously rebut the evidence" as to the amounts expended by Christman Stuart Interiors, LLC, in its claim for a setoff. Fourth, the court was not, as the plaintiffs argue, obligated to accept the plaintiffs' calculations simply because the claim of a fiduciary relationship had been made. Calculations, without more, did not put the matter at issue.

II

The plaintiffs also claim that the court applied an incorrect burden of proof with respect to their statutory theft count. Specifically, the plaintiffs argue that the court improperly required them to prove their claims for treble damages pursuant to § 52-564[7] by clear and convincing evidence. The plaintiffs claim that the proper standard of proof in awarding damages under that statute is the preponderance of the evidence standard. "When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 133, 891 A.2d 133 (2006).

In support of their claim, the plaintiffs cite *Howard* v. *MacDonald*, 270 Conn. 111, 851 A.2d 1142 (2004). In

[7] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

that case, the plaintiff executor alleged that the defendant breached a fiduciary duty and exercised undue influence in obtaining moneys from the plaintiff's decedent. Id., 114. The jury found in favor of the plaintiff and found by clear and convincing evidence that the defendant had committed statutory theft, awarding treble damages pursuant to § 52-564. Id., 123. The court set aside the verdict in connection with the statutory theft claim, concluding that the plaintiff had not proven that claim by clear and convincing evidence. Id., 124. On appeal, the plaintiff claimed that the proper standard of proof was the preponderance of the evidence standard. Id., 125.

Our Supreme Court noted that § 52-564 is silent on the burden of proof issue. The court, however, did not make a determination as to the appropriate burden of proof. "We need not decide expressly, however, whether, in order to prevail on his claim for relief under a theory of statutory theft, the plaintiff must prove the elements by clear and convincing evidence or a preponderance of the evidence, because we conclude that, even under the heightened burden, the plaintiff provided sufficient evidence that the jury reasonably could have believed to support its conclusion that the defendant had committed statutory theft as that cause of action has been defined." Id., 130.

Cases decided prior to *Howard* v. *MacDonald*, supra, 270 Conn. 111, had applied the clear and convincing standard of proof to statutory theft claims. Statutory theft, under § 52-564, is synonymous with the crime of larceny as defined in General Statutes § 53a-119. A person commits larceny within the meaning of § 53a-119 "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or [withholds] such property from an owner." (Internal quotation marks omitted.) *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 521,

705 A.2d 215 (1998). In *Suarez-Negrete*, this court determined that "[t]he trial court properly recognized that the plaintiff was required to satisfy the higher standard of proof by clear and convincing evidence to be entitled to an award of treble damages pursuant to § 52-564." Id., 520. In reaching that conclusion, we relied on *Schaffer* v. *Lindy*, 8 Conn. App. 96, 105, 511 A.2d 1022 (1986), in which we held that "clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to § 52-564."

We are aware that our Supreme Court, in *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 607 A.2d 370 (1992), criticized certain language in *Schaffer*. Specifically, the Supreme Court did not agree that clear and convincing proof is an appropriate standard of proof in all instances in which claims of tortious conduct have serious consequences or harsh or far-reaching effects on individuals or require the proof of wilful, wrongful and unlawful acts. Id., 682–83. For that reason, in *Freeman*, the Supreme Court held that this court improperly concluded that entitlement to an award of statutory punitive damages pursuant to General Statutes § 47a-46 required proof by clear and convincing evidence. The proper standard of proof was the preponderance of the evidence standard. *Freeman* v. *Alamo Management Co.*, supra, 678–79. Although *Freeman* disagreed with the rationale in *Schaffer*, it did not overrule the case, and our Supreme Court has yet to determine the proper standard of proof in statutory theft claims. See *Howard* v. *MacDonald*, supra, 270 Conn. 130.

Moreover, the statutory language of § 47a-46 is significantly different from that of § 52-564. Section 47a-46 provides in relevant part that an aggrieved party "*may* recover in a civil action double damages and his costs against the defendant" in certain entry and detainer situations. (Emphasis added.) The statute requires the court to make a determination that, taking into account

all of the circumstances of the case, an award of damages is appropriate. *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 684. General Statutes § 52-564, however, provides that a person who steals the property of another "*shall* pay the owner treble his damages." (Emphasis added.) Under § 52-564, the trial court lacks the discretion it is afforded under § 47a-46.

We therefore conclude that the holding in *Schaffer* v. *Lindy*, supra, 8 Conn. App. 96, with respect to the requisite burden of proof in statutory theft claims, remains intact. To be entitled to an award of treble damages under § 52-564, a plaintiff must prove the actions alleged by clear and convincing evidence.[8]

### III

Count six of the plaintiffs' complaint, alleging the fraudulent transfer of the Hurlbutt Street property from Stuart, Jr., to Christman, was brought pursuant to the Uniform Fraudulent Transfer Act (act), General Statutes § 52-552a et seq. The plaintiffs claim that the court improperly concluded that they had not met the burden of proving actual intent to hinder, delay or defraud, which is required to prevail on that claim. Specifically, they argue that they proved that the subject conveyance was made with a fraudulent intent in light of the factors set forth in General Statutes § 52-552e. In its decision, the court addressed those factors and concluded that the evidence did not support a finding of fraud.

We note that the court initially discussed the transfer of the Hurlbutt Street property in the section of its memorandum of decision addressed to the plaintiffs' breach of fiduciary duty claims against Stuart, Jr. In that section, the court set forth the applicable standard

---

[8] We also note that Connecticut case law firmly establishes that fraud must be proven by clear and convincing evidence. *Alaimo* v. *Royer*, 188 Conn. 36, 39, 448 A.2d 207 (1982). This provides additional support for our conclusion that statutory theft must be proven by the higher standard.

of proof for challenges to transactions made by Stuart, Jr., in his fiduciary capacity, which was proof by clear and convincing evidence. The court concluded that because Stuart, Jr., and Christman had paid a fair price for the property, the transfer of the Hurlbutt Street property to them by the partnership did not constitute improper self-dealing. The plaintiffs claim, however, that the transfer by Stuart, Jr., of his interest in the property to Christman, resulting in her sole ownership of the Hurlbutt Street property, was a violation of the act.

The act is largely an adoption and clarification of the standards of the common law of fraudulent conveyances. *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 596, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007). As provided in General Statutes § 52-552k, "[u]nless displaced by the provisions of sections 52-552a to 52-552*l*, inclusive, the principles of law and equity, including . . . the law relating to . . . fraud . . . supplement the provisions of said section."

"In common-law fraud cases, the plaintiff has the burden of proving fraud by clear and convincing evidence. When a plaintiff alleges fraud *and* the existence of a fiduciary duty, however, the plaintiff has only the burden of proving that the other party owed him or her a fiduciary duty. Once the plaintiff has demonstrated that a fiduciary relationship exists, the burden is lifted from the plaintiff and placed on the fiduciary. Specifically, the burden placed on the fiduciary is the burden to prove that the fiduciary's conduct was fair and equitable. If the fiduciary is able to meet this burden, then the plaintiff's case fails because if the behavior was fair and equitable, it is axiomatic that the behavior was not fraudulent." (Emphasis in original.) *Wieselman* v. *Hoeniger*, supra, 103 Conn. App. 595 n.7.

In the present case, the court already had determined that the transfer of the Hurlbutt Street property did

not constitute improper self-dealing. Having made that determination, the court already had resolved the "actual intent to defraud" claim. See id. Nevertheless, given the findings and conclusions of the court with respect to the payment that was to be made by Stuart, Jr., to the partnership for that transfer, we acknowledge that the court's determination of fair dealing may appear to be inconsistent.

In its memorandum of decision, the court found that Stuart, Jr., had issued himself a credit from the partnership in the amount of $490,755 for his five-ninths interest in the Hurlbutt Street property and that the partnership received about $409,000 from Christman, through a mortgage loan that she had obtained from New Milford Bank, for her four-ninths interest in the property. Although the court concluded that the partnership never received the $490,755 it purportedly was paid for the interest of Stuart, Jr., in the property, the court found that the plaintiffs failed to prove the actual intent to defraud because "there was no proof that Christman knew that there was a failure of consideration in connection with [the payment by] Stuart, Jr., and no clear and convincing evidence that Stuart, Jr., who was claiming a right to be compensated for running the partnership, understood that his $490,755 credit was worthless."

The court's conclusion that the conveyance did not constitute improper self-dealing, however, was based on its finding that the sales price of $900,000 was a fair price. Yet, the court determined that the partnership never received $490,755 of that sales price. Furthermore, the court concluded that $490,755 must be awarded to the plaintiffs as damages resulting from the breach of fiduciary duties by Stuart, Jr. One of the statutory factors to be considered in determining whether there was an actual intent to defraud is whether "the value of the consideration received by the debtor

was reasonably equivalent to the value of the asset transferred . . . ." General Statutes § 52-552e (b) (8). The plaintiffs claim that the court improperly failed to take into account the fact that the consideration actually received, i.e., the $400,000 received from Christman, was less than the fair market value of the Hurlbutt Street property, which was found to be $970,000 by the court.[9]

The plaintiffs' argument fails for two reasons. First, the court noted that although it could be argued that the partnership did not receive equivalent value for the property because it never received the $490,755 consideration from Stuart, Jr., "[t]he plaintiffs have not pursued the claim in this form but have based their lack of equivalent value claim on the contention that the Hurlbutt Street property had a true market value of $1.6 million." It is only now, on appeal, that the plaintiffs raise a theory of lack of equivalent value based on the failure of the $490,000 consideration. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one." (Internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007).

Second, it is undisputed that the court awarded the plaintiffs the sum of $490,755 as damages for the failure by Stuart, Jr., to pay the consideration for his interest in the Hurlbutt Street property. Under General Statutes

---

[9] The plaintiffs also claim that they satisfied the remaining factors set forth in General Statutes § 52-552e (b) in proving the actual intent to defraud. Those challenges, however, are addressed to the credibility of Christman's testimony. They argue that the court could not have credited her testimony concerning the transfer of the property because the testimony was inconsistent, she had a Connecticut real estate license and she was aware of the ongoing litigation between the plaintiffs and Stuart, Jr. They summarize: "Plainly stated, Christman's tale of alleged naivete is simply not credible." It is axiomatic that the court, as fact finder, was free to believe or disbelieve all or any part of her testimony. See *Epstein* v. *Carrier*, 12 Conn. App. 691, 698, 533 A.2d 1221 (1987).

§ 52-552i (b),[10] the court can award the value of the asset transferred as damages. The plaintiffs have not claimed that an award of monetary damages is improper as a remedy under the act or that the court could order only the setting aside of the conveyance. Accordingly, even if the court had determined that the conveyance to Christman violated the act, the court would have acted within its statutory authority when it ordered Stuart, Jr., to pay the value of the asset as damages for that violation.

IV

The plaintiffs next claim that the court improperly awarded prejudgment interest at the rate of 7.5 percent when General Statutes § 37-3a[11] requires that the court apply the statutory rate of 10 percent. Although the plaintiffs have conceded that the court had discretion in determining whether to award prejudgment interest, they claim that the court was required to apply the rate of 10 percent once it determined that an award was appropriate.

*Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 699 A.2d 81 (1997), is dispositive of the plaintiffs' claim. Faced with the identical issue, our Supreme Court held: "[W]e decline to negate, judicially, the significance of the phrase 'and no more' by holding

---

[10] General Statutes § 52-552i (b) provides: "Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision (1) of subsection (a) of section 52-552h, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (d) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made, or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee."

[11] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

that § 37-3a fixes the rate of prejudgment interest at 10 percent. We conclude instead that, consistent with its plain language, § 37-3a establishes a maximum rate above which a trial court should not venture in the absence of specific legislative direction." Id., 765–66. Accordingly, it was within the discretion of the court to award prejudgment interest at the rate of 7.5 percent for the breach of fiduciary duty claims against Stuart, Jr.

## V

The plaintiffs next claim that the court improperly concluded that Christman Stuart Interiors, LLC, was entitled to a setoff because it had not affirmatively raised that claim in its pleadings. See *Peters Production, Inc.* v. *Dawson*, 182 Conn. 526, 528, 438 A.2d 747 (1980); Practice Book § 10-54. The plaintiffs also maintain that there was no evidence to support the court's finding because no checks were produced to substantiate the accounting records. Further, they claim that because Stuart, Jr., would benefit from the setoff, it would be against public policy to permit it.[12]

Christman Stuart Interiors, LLC, did not plead setoff as a special defense in its answer to the complaint prior to trial. After the court issued its memorandum of decision on June 28, 2004, the plaintiffs filed a motion for reargument in which they claimed, inter alia, that Christman Stuart Interiors, LLC, was not entitled to a setoff because it failed to raise that claim in its pleadings. In the court's memorandum of decision on the motion for reargument, the court addressed the plaintiffs' claim as follows: "[Christman Stuart Interiors, LLC] presented evidence in support of a setoff without objection at trial, and the case was tried and subsequently briefed by all parties on that basis. Having been

[12] The claim that the award offends public policy is an abstract assertion in the plaintiffs' brief. Their brief provides no citations to case law and no legal analysis. We decline to address that claim. See footnote 2.

belatedly alerted to the alleged pleading deficiency by the reargument motion, [Christman Stuart Interiors, LLC] subsequently requested to amend its pleading to include a setoff claim, and this request was not objected to. Under these circumstances, equity and good conscience will not permit allowance of the plaintiffs' claim on reargument to eliminate the setoff."

We agree with the court's resolution of that claim. "[A] trial court may allow, in its discretion, an amendment to pleadings before, during, or . . . after trial to conform to the proof." *Saphir* v. *Neustadt*, 177 Conn. 191, 206, 413 A.2d 843 (1979); see also Practice Book § 10-62. Furthermore, as indicated by the court and borne out by a review of the court file, the plaintiffs filed no objection to the request filed by Christman Stuart Interiors, LLC, to amend its pleading. Practice Book § 10-60 (a) (3) provides that an amendment shall be deemed to have been filed by consent of the adverse party if no objection to the request for leave to file the amendment is made within fifteen days from the date of filing. Accordingly, there was no pleading deficiency with respect to the claim for a setoff.

With respect to the plaintiffs' claim that there was no evidence to support such an award, the plaintiffs acknowledge that the accounting records were submitted as an exhibit. They argue, however, that the court could not consider those records because there were no copies of checks or invoices to corroborate those records. They cite no case law that requires supporting documentation under such circumstances. The court was free to consider whatever testimony it found credible and to rely on any exhibits admitted as evidence. The plaintiffs' argument is nothing more than an attempt to retry the facts. "We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652,

664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

## VI

The plaintiffs next claim that the court failed to award them additional claimed damages even though they had submitted sufficient evidence in support of those damages. The plaintiffs enumerate twelve instances in which damages were sought but not recovered. In eight of those twelve instances, the plaintiffs have provided no references to the trial transcripts or exhibits to support their contentions. We again note that the trial was twenty-five days in length and that twelve boxes of exhibits were admitted as evidence. It is the cross appellants' responsibility to provide an adequate record for review. See Practice Book § 60-5. The cross appellants' brief is required to contain appropriate references to the page or pages of the transcripts or to the relevant documents. See Practice Book § 67-4 (d). This court will not review thousands of pages of transcripts and exhibits to determine whether the plaintiffs' claims are supported by the record.

With respect to the remaining four claims, the plaintiffs are challenging the factual findings of the court, and we therefore review those findings under the clearly erroneous standard of review. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Porter* v. *Morrill*, supra, 108 Conn. App. 664.

## A

The plaintiffs' first evidentiary claim is that the court improperly failed to award the total amount of the

American Express invoices submitted as evidence. The plaintiffs further claim that the award should be trebled as statutory theft damages, pursuant to § 52-564. As indicated in the plaintiffs' brief, the court declined to award damages in connection with the challenged invoices because the plaintiffs failed to provide any testimony with respect to those invoices. Because they claimed that Stuart, Jr., breached his fiduciary duties in incurring the challenged expenses, the plaintiffs argue that the mere submission of the invoices in evidence was sufficient for the court to award and treble the amounts in those invoices.

As the court noted in its memorandum of decision on the plaintiffs' motion for reargument, a large number of American Express invoices were entered into evidence in boxes along with thousands of other documents. Although the court agreed with the plaintiffs' expert when he testified that several of those invoices were for the personal expenses of Stuart, Jr., and the court included those amounts in the damages awarded for the breach of fiduciary duty claims, the other invoices were not referred to directly during the trial. The court, therefore, properly declined to include those amounts as damages. The plaintiffs, by doing nothing more than burying those invoices in a mountain of paper, failed to put those particular invoices at issue; most certainly, they did not meet the high burden necessary for the awarding of treble damages.

The responsibility of a court is to respond to those claims fairly advanced. The mere recital of those claims, supposedly bolstered by the submission of a voluminous mass of documentary material, without directing the court's attention to those specific portions claimed to be relevant and material, does not adequately place those claims before the court for its consideration. See *Drabik* v. *East Lyme*, 234 Conn. 390, 397–99, 662 A.2d 118 (1995); *Solek* v. *Commissioner of Correction*, 107

Conn. App. 473, 480, 946 A.2d 239 (2008). The court's decision was not clearly erroneous with respect to the American Express invoices.

B

The plaintiffs' next evidentiary claim is that the court awarded insufficient damages with respect to personal mortgage payments made by Stuart, Jr., with trust and estate assets. It is difficult to determine from the plaintiffs' argument whether they are claiming that the court failed to award the amount of the payments made or whether it failed to treble those damages pursuant to § 52-564. If the former, it appears from the court's decision that it did include personal mortgage payments from the trust in its determination of damages: "Among the payments from the trust made for personal expenditures of Stuart, Jr., were alimony payments to his former wife (approximately $1200 per month), payments on behalf of his daughter, Leigh, personal mortgage payments ($1907.11 per month) and the painting of his personal residence." If the plaintiffs dispute that those payments were included in the award, they should have requested an articulation or clarification of the court's decision. See Practice Book § 66-5.

If the plaintiffs are claiming that the court failed to treble those damages as statutory theft damages, they have failed to indicate in their brief how they carried their burden of clear and convincing evidence in establishing their entitlement to treble damages. In determining which damages should be trebled, the court indicated: "The parties may have greatly varying views on the correctness of the court's evaluation of what items of damages qualify for § 52-564 treatment. In one's eyes, an expenditure may be clearly larcenous while in another's eyes it was an error in judgment or accounting practice without the intent to deprive. However, the above listing is the product of the court's best judgment

in light of the available evidence and the high standard of proof." It is well established that we do not examine the record to determine whether the trier of fact could have reached a different conclusion, but rather we examine the trial court's conclusion to determine whether it was legally correct and factually supported. See *First National Bank of Litchfield* v. *Miller*, 285 Conn. 294, 302, 939 A.2d 572 (2008).

The evidence included a letter from the accountant for the estate and other defendant entities that indicated that the living expenses of Stuart, Jr., were paid from those entities and charged or reclassified at the end of the year. Additionally, Stuart, Jr., maintained loan accounts on the records of those entities that indicated the accumulation of his personal expenses and that showed periodic payments. From the record, and the lack of any analysis by the plaintiffs indicating otherwise, we cannot conclude that the court's determination that the plaintiffs had not established their entitlement to the trebling of damages for the personal mortgage payments of Stuart, Jr., was clearly erroneous.

C

The plaintiffs' third evidentiary claim is that the court improperly failed to award damages for the security losses incurred by the estate as a result of the mismanagement of trust assets by Stuart, Jr. The plaintiffs argue that those losses should have been assessed as damages against Stuart, Jr., for his violation of the Connecticut Uniform Prudent Investor Act (Prudent Investor Act), General Statutes § 45a-541 et seq. In support of that claim, the plaintiffs refer to an exhibit submitted at trial calculating the losses sustained.

In the court's memorandum of decision on the plaintiffs' motion for reargument, the court addressed that issue. It first noted that although it agreed that Stuart, Jr., violated the act, it had declined to award additional

damages pursuant to that claim because they would have been duplicative of the breach of fiduciary duty damages already assessed. Further, the court indicated that the exhibit relied on by the plaintiffs "purports to show losses in certain brokerage accounts; however, by itself, it is of little probative value and there was little, if any, evidence presented to amplify the exhibit or show how the losses occurred and why they should be chargeable to Stuart, Jr. In their extensive posttrial memorandum, the plaintiffs did not claim any damages under the [Prudent Investor Act] and made no mention of [the exhibit]."

The court did not find the exhibit to be persuasive evidence and found that the claim had not been properly presented before it. We conclude that the court's determinations were not clearly erroneous.

### D

The plaintiffs' final evidentiary claim is that the court failed to include in its award to the plaintiffs certain amounts paid by Talbot House on behalf of Christman Stuart Interiors, LLC. They argue that Stuart, Jr., was acting in his fiduciary capacity and failed to meet his burden of proof that those items were proper expenses. The plaintiffs further request that the damages be trebled pursuant to § 52-564.

The court also addressed that particular claim in its memorandum of decision on the plaintiffs' motion for reargument. The court found that there was no probative proof that the expenses were paid on behalf of Christman Stuart Interiors, LLC. In other words, the plaintiffs failed to put that matter at issue, and, as the court concluded, it never reached "the point where the burden shifted to the fiduciary." Given the court's assessment of the evidence, we conclude that its determination was not clearly erroneous.

## VII

The plaintiffs' next claim is that the court's failure to disinherit Stuart, Jr., from Stuart, Sr.'s estate violated public policy. They argue that the award of damages to the estate of Stuart, Sr., permits Stuart, Jr., to profit from his wrongdoing by inheriting his one-third share.

We need not address the issue of whether this court has the authority to usurp the probate statutes by disinheriting a beneficiary under a validly executed will. The plaintiffs never claimed this remedy in their prayer for relief and never presented the claim for disinheritance before the trial court. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one." (Internal quotation marks omitted.) *Ingels* v. *Saldana*, supra, 103 Conn. App. 730. "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

## VIII

The plaintiffs' final claim is that the court improperly awarded attorney's fees, accounting costs and prejudgment interest to the estate of Stuart, Sr., rather than to the plaintiffs individually. Specifically, they argue that the fees were incurred directly by the plaintiffs, not the estate, and would have been unnecessary if Stuart, Jr., had managed properly the assets of the trust and estate.

With respect to the claim concerning attorney's fees, we conclude that the plaintiffs' cross appeal was not taken from a final judgment. As previously noted, the court issued its initial memorandum of decision on June

28, 2004, in which it determined that an award of attorney's fees was appropriate and indicated that a hearing would be scheduled to determine the amount. On July 19, 2004, the defendants filed their appeal, and on July 29, 2004, the plaintiffs filed their cross appeal. Subsequently, the court held a hearing and issued its memorandum of decision on February 10, 2005, in which it awarded attorney's fees and costs in the amount of $39,001.11. The plaintiffs did not amend their cross appeal to include this postjudgment ruling.

In *Paranteau* v. *DeVita*, 208 Conn. 515, 524 n.11, 544 A.2d 634 (1988), our Supreme Court determined that "[a] supplemental postjudgment award of attorney's fees becomes final and appealable . . . not when there is a finding of liability for such fees, but when the amount of fees are conclusively determined." An award of attorney's fees without a determination of the amount of the attorney's fees is not an appealable final judgment. See *Burns* v. *General Motors Corp.*, 80 Conn. App. 146, 150 n.6, 833 A.2d 934, cert. denied, 267 Conn. 909, 840 A.2d 1170 (2003). Because the plaintiffs did not file an amended cross appeal from the trial court's postjudgment order, as required by Practice Book § 61-9, we do not review the plaintiffs' claim addressed to the propriety of that order. See *Jewett* v. *Jewett*, 265 Conn. 669, 673 n.4, 830 A.2d 193 (2003).

With respect to the plaintiffs' claim that the accounting fees awarded by the court should have been payable to them individually because they incurred the expenses, we conclude that the record is inadequate to make such a determination. In their brief, the plaintiffs argue that "[a]s the evidence demonstrated, these fees were incurred directly by the plaintiffs, not the estate, and would have been unnecessary if Stuart, Jr., had properly managed the estate." The plaintiffs provide, however, no references to transcript testimony or exhibits that demonstrate that they did indeed incur

the expenses. We decline to review thousands of pages of transcripts and exhibits to find support for the plaintiffs' claims. It is the responsibility of the cross appellants to provide us with an adequate record for review. See Practice Book § 60-5; *Wilson* v. *Hryniewicz*, 38 Conn. App. 715, 720 n.7, 663 A.2d 1073, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).

The plaintiffs' claim that the award of prejudgment interest should have been payable to them individually rather than to the estate of Stuart, Sr., has not been adequately briefed. Their entire argument is that "the prejudgment interest, if awarded to the estate rather than [to] the plaintiffs, may permit Stuart, Jr., to partake in one third of this interest." We decline to review that claim. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005).

The judgment is affirmed.

In this opinion the other judges concurred.